THE STATE OF OHIO, APPELLEE, *v.* MILLER, APPELLANT.

(No. WD-87-40 — Decided April 8, 1988.)

*Betty Montgomery,* prosecuting attorney, for appellee.

*John P. Donahue,* for appellant.

*Per Curiam.* This cause is on appeal from a judgment of the Wood County Court of Common Pleas.

Appellant filed a timely notice of appeal asserting the following assignments of error:

"I. The trial court erred, as a matter of law, in denying appellant's petition to vacate and set aside judgment and sentence, since appellant's constitutional rights to due process of law and effective assistance of counsel have been violated.

"II. The trial court erred, as a matter of law, in denying appellant's petition to vacate and set aside judgment and sentence, since appellant was denied effective assistance of counsel at trial.

"III. The trial court erred, as a matter of law, in denying appellant's petition to vacate and set aside judgment and sentence, since appellant's right to due process was violated by the admission at trial of evidence of his post-arrest silence."

Appellant was indicted by the Wood County Grand Jury for violation of R.C. 2907.02, rape. A jury trial was held on August 13 and 14, 1984. Appellant was found guilty and sentenced pursuant to law.

Counsel was assigned by the trial court for purposes of appeal. A notice of appeal was timely filed on September 6, 1984. This court dismissed appellant's appeal for failure to file assignments of error and a brief pursuant to App. R. 18(C) and Local App. R. 5. On April 16, 1985, appellant filed a motion for leave to file a delayed appeal with this court. The motion was denied on June 10, 1985. Subsequently, appellant filed a petition for postconviction relief in the trial court pursuant to R.C. 2953.21.

In his petition for postconviction

relief, appellant alleged that he was denied effective assistance of counsel at both the trial level and when filing his direct appeal. He further alleged that evidence of his post-arrest silence was improperly admitted.

A hearing was held on said petition on April 7, 1987. The trial judge issued its findings of facts and conclusions of law, denying relief, on April 21, 1987. The instant appeal ensued from that judgment.

In his first assignment of error, appellant argues that he was denied effective assistance of counsel on his direct appeal in violation of his Sixth Amendment rights.

In *Evitts* v. *Lucey* (1985), 469 U.S. 387, respondent's counsel filed a timely notice of appeal to the Kentucky Court of Appeals, but failed to file the statement of appeal as required by a Kentucky Rule of Appellate Procedure. The Kentucky Supreme Court therefore dismissed the appeal and denied a motion for reconsideration. In affirming the federal district court's order that respondent be released unless his appeal was reinstated or he was granted a new trial, the United States Supreme Court stated:

"[The] right to counsel is limited to the first appeal as of right, see *Ross* v. *Moffitt,* 417 U.S. 600 (1974), and the attorney need not advance *every* argument, regardless of merit, urged by the appellant, see *Jones* v. *Barnes,* 463 U.S. 745 (1983). But the attorney must be available to assist in preparing and submitting a brief to the appellate court, *Swenson* v. *Bosler,* 386 U.S. 258 (1967) (*per curiam*), and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim. See *Anders* v. *California,* 386 U.S. 738 (1967); see also *Entsminger* v. *Iowa,* 386 U.S. 748 (1967)." (Emphasis sic.) *Id.* at 394.

It was concluded that "[a] first ap-

peal of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." (Footnote omitted.) *Id.* at 396.

The facts in the instant case with respect to appellant's first assignment of error are similar to those in *Evitts* v. *Lucey, supra.* That is, although a timely notice of appeal was filed in this court, appellant's counsel failed to file a brief pursuant to App. R. 18 and the appeal was dismissed. Accordingly, appellant now asks us to order his discharge unless he is retried or his right to appeal is reinstated.

We agree that it would be proper to order the trial court to vacate appellant's sentence and enter a new judgment thereby allowing for a direct appeal to be taken from the new judgment. See *Stahl* v. *Commonwealth* (Ky. 1981), 613 S.W. 2d 617, and *Rodriguez* v. *United States* (1969), 395 U.S. 327. However, following this procedure would only result in a longer delay of addressing appellant's grievances. Therefore, since all the arguments which could have been raised on direct appeal are before us on appeal from denial of appellant's postconviction relief petition, we conclude that this is a sufficient remedy for appellant's frustrated right of direct appeal. *Evitts* v. *Lucey, supra,* at 399, citing with approval *Hammershoy* v. *Commonwealth* (Ky. 1966), 398 S.W. 2d 883.

Accordingly, we find appellant's first assignment of error not welltaken.

In his second assignment of error, appellant cites many alleged errors of counsel at trial which purportedly give rise to a violation of appellant's Sixth Amendment right to effective counsel.

Appellant argues that his counsel erred in failing to object to suggestions made during the testimony of Detec-

tive Frizzell that appellant had a prior criminal record.

At trial, the following exchange took place between the prosecutor and Detective Frizzell:

"Q: After you interviewed them and made your determination did you do anything further to identify who this person was?

"A: Ran a records check on the subject and found he had —

"Q: I don't want you to indicate that. Was there an identification process of some kind?

"A: Yes, a photo line-up.

"Q: And how did that take place, can you describe the photo line-up?

"A: I obtained a mug shot of the suspect and put it in a photo line-up with four other mug shots and at that time I had the mother, Linda, look at it to see if she could identify the subject that had come to her residence that afternoon."

Evid. R. 404(B) provides that:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

It is clear that any evidence regarding any prior crimes which appellant may have committed was not admissible since the prosecution was not attempting to show intent, motive, knowledge, or any of the other factors enumerated in Evid. R. 404(B). However, as stated by the trial judge, we cannot conclude that counsel's failure to object or ask for a limiting instruction prejudiced appellant in any way since doing so may have only highlighted the testimony in the minds of the jury.

Appellant also argues that his trial counsel failed to object to the competency of Lisa Rothfleisch's testimony or to ask for the right to voir dire her outside the presence of the jury thereby preventing appellant from having a fair trial. Lisa Rothfleisch, the victim, was twelve years old at the time of the trial and was characterized by her mother as being mildly retarded.

Evid. R. 601 provides, in pertinent part:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *."

The term "of unsound mind" includes all forms of mental retardation. R.C. 1.02(C).

The instant case is distinguishable from *State* v. *Kinney* (1987), 35 Ohio App. 3d 84, 519 N.E. 2d 1386. In that case, it was argued that the trial court committed prejudicial error in allowing the victim of a rape to testify since she was incompetent under Evid. R. 601. At the trial, the victim had reached the age of ten. The mother testified that her daughter was retarded with an I.Q. lower than fifty-eight and that she sometimes made things up as a way of reaching out for help. A police officer also testified that the victim confused the incident in question with a separate incident. The court of appeals held that, because of this testimony, the victim's competency was clearly called into question by the time she was called to testify, although no objection was made by defense counsel. Therefore, it was concluded that "* * * [u]nder the circumstances of this case, * * * in order to fulfill its obligation to determine the competence of a witness of unsound mind, * * * the trial court should have inquired into [the victim's]

capacity to receive just impressions of the facts and to relate them truly, and that the failure to do so was error." *State* v. *Kinney, supra,* at 86, 519 N.E. 2d at 1388.

In the instant case, there was no indication before Lisa was called to testify that she would not be able to give a correct account of the incident, as in *State* v. *Kinney.* Furthermore, when called to testify, the court asked her if she was going to tell the truth and if everything she said was going to be the truth. Lisa replied "Yes." This inquiry is generally part of the voir dire of a witness to determine competency.

Given the record before us, we cannot conclude that it was prejudicial error for the defense counsel to fail to object to Lisa's testimony on the basis of incompetency or to request a voir dire. The only information we have as to Lisa's mental capacity is the testimony of her mother classifying her as "mildly retarded." This tells us nothing.

Furthermore, Lisa was able to relate the events which transpired at appellant's home rather well. Although she became confused on cross-examination, this often happens to retarded and non-retarded witnesses alike.

Appellant also argues that counsel's failure to object to the prosecutor's use of "excessively" leading questions during the direct examination of Lisa gives rise to ineffective assistance of counsel.

Evid. R. 611(C) states:

"(C) Leading questions. Leading questions should not be used on the direct examination of a witness *except as may be necessary to develop his testimony.* Ordinarily leading questions should be permitted on cross-examination. * * *" (Emphasis added.)

Therefore, it is within the discretion of the trial court to permit the state to ask leading questions of its own witnesses. See *State* v. *Madden* (1984), 15 Ohio App. 3d 130, 133, 15 OBR 221, 224-225, 472 N.E. 2d 1126, 1130, and *State* v. *Smith* (1977), 59 Ohio App. 2d 194, 203, 13 O.O. 3d 213, 218, 392 N.E. 2d 1264, 1270.

As stated in *State* v. *Lewis* (1982), 4 Ohio App. 3d 275, 278, 4 OBR 494, 497, 448 N.E. 2d 487, 490, "[t]he exception 'except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." In two rape cases, it was held that the trial court did not abuse its discretion in allowing the prosecutor to ask highly leading questions of the victim. *State* v. *Holt* (1969), 17 Ohio St. 2d 81, 83, 46 O.O. 2d 408, 409, 246 N.E. 2d 365, 366, and *State* v. *Madden, op. cit.*

Although the issue presented in the case *sub judice* does not pertain to abuse of discretion but to defense counsel's failure to object, this form of questioning is routinely allowed and any objection undoubtedly would have been overruled.

The fact that Lisa left the witness stand and walked around the courtroom in order to identify her attacker without objection from the defense attorney cannot be called prejudicial error. Lisa forgot to wear her glasses on the day she was called to testify. When she came before the appellant, she was able to identify him as the perpetrator. Furthermore, this is not a case where the victim was not acquainted with the defendant before the attack took place. Rather, Lisa had an ongoing relationship with appellant's daughter and had come into contact with appellant several times prior to the rape. The identity of appellant was not in question as Lisa had unequivocally identified appellant as her attacker immediately after the rape to both her mother and to the police.

Appellant argues that a further indication of defense counsel's ineffectiveness is illustrated by his failure to object to the admission of evidence of appellant's post-arrest silence. At trial, the following testimony was part of the direct examination by the prosecutor of Detective Frizzell, the investigating detective:

"Q: Did he state what was on TV that they were watching?

"A: A basketball game.

"Q: Did he ever tell you he was listening to a baseball game on the radio?

"A: No, not that I recall.

"Q: He told you he was watching basketball on TV?

"A: Right.

"Q: And did he ever tell you that Lisa pulled up the top of her clothes while she was there?

"A: No, he didn't.

"Q: Never told you that?

"A: No.

"Q: Not only on that day, but has he since then ever told you that?

"A: No. I don't believe I've talked to Mr. Miller since that day.

"Q: To your knowledge, has he told that to anyone in the sheriff's department?

"A: No.

"Q: You're in charge of this case?

"A: Yes.

"Q: You're not aware of him making that statement to anyone before today.

"A: No."

The prosecutor, in closing, mentioned twice that appellant had never before told the story he told at trial.

In *Doyle* v. *Ohio* (1976), 426 U.S. 610, the petitioners were arrested for the sale of marijuana. They were given *Miranda* warnings and made no post-arrest statements about their involvement in the crime. The prosecution then sought to impeach their exculpatory version of the facts by asking why such an explanation was not given at the time of the arrest. In holding that the use of post-arrest silence was unconstitutional, the court stated that "* * * while * * * *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (Footnote omitted.) See, also, *State* v. *Sabbah* (1982), 13 Ohio App. 3d 124, 13 OBR 155, 468 N.E. 2d 718.

In the case *sub judice,* although references were made to the fact that appellant had not offered his version of the story prior to trial, the rationale of *Doyle, supra,* is inapplicable since appellant expressly waived his *Miranda* rights. See *Anderson* v. *Charles* (1980), 447 U.S. 404. Therefore, defense counsel's failure to object to the introduction of such testimony was not prejudicial error.

Appellant further argues that trial counsel acted ineffectively in failing to file a motion to suppress physical evidence and statements obtained in violation of his constitutional rights. However, the search warrant was properly executed and based upon probable cause. Moreover, appellant was fully advised of his *Miranda* rights and chose to waive them. Upon these facts, any motion to suppress would have been without merit and, therefore, trial counsel did not commit error in failing to file or argue such a motion.

Appellant argues that the introduction of his written *Miranda* waiver during the state's rebuttal was improper and should have been objected to by defense counsel. However, testimony had already been adduced that appellant had waived his *Miranda* rights. Appellant also claims error on

the part of his trial counsel in failing to object to the "proffering" of testimony of appellant's wife rather than mere summation. This testimony was adduced prior to selection of the jury pursuant to defense counsel's motion *in limine* to exclude her testimony. This court finds absolutely no error in this procedure and appellant's argument is absolutely baseless.

Appellant also argues that defense counsel erroneously referred to the possibility of punishment in his closing. Prior to trial, the prosecutor requested that there be no mention as to punishment during trial. The court specifically stated that defense counsel should not indicate whether any mandatory term would be imposed although the subject of punishment could be mentioned. Moreover, this court fails to see how the mentioning of punishment could be classified as prejudicial error. It is within the perception of any reasonable lay person that punishment is a likely consequence in a crime such as rape. Furthermore, the jury was instructed that closing arguments are not evidence which can be considered.[1]

Appellant also maintains that trial counsel's ineffectiveness is shown by his failure to ask the court to instruct the jury on the lesser included offense of sexual battery.

"An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 384, 18 O.O. 3d 528, 530, 415 N.E. 2d 303, 306. As to the first two requirements set forth above, the Ohio Supreme Court has held that sexual battery is an offense of a lower degree than rape and that the offense of "rape," defined in R.C. 2907.02 (A)(1), cannot be committed without the offense of "sexual battery," defined in R.C. 2907.03(A)(1), being committed. See *State* v. *Wilkins, supra,* at 385-386, 18 O.O. 3d at 530, 415 N.E. 2d at 306-307.

As to the third requirement, however, we must determine whether one element of the offense of rape is not required to prove the commission of sexual battery. This requires a distinction between the words "purposely" and "knowingly" as used in R.C. 2907.02 and 2907.03. The Ohio Supreme Court has construed the difference of these two words to satisfy the third requirement set forth in *State* v. *Wilkins.* Thus, sexual battery *may* be a lesser included offense of rape. However, "[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged. * * *" *State* v. *Wilkins, supra,* at 387, 18 O.O. 3d at 531, 415 N.E. 2d at 307.

The rule which must be followed in determining whether a court must instruct on a lesser included offense was set forth in *Wilkins, supra,* at 388, 18 O.O. 3d at 532, 415 N.E. 2d at 308:

"If the evidence adduced on behalf of the defense is such that if accepted

---

[1] Although certain statements made during closing argument by the prosecutor inferring that appellant was a "bad" person may have been improper, there was no prejudicial error since the overwhelming emphasis of the closing argument was based upon the evidence. Furthermore, the prosecutor is allowed some latitude in closing and "* * * [t]he jury should be given credit for sufficient common sense and sound judgment to discount the remarks made in this case. * * *" *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 26, 35 O.O. 2d 8, 15, 215 N.E. 2d 568, 578.

by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense."

In the case *sub judice,* given the evidence presented and construing it most favorably to appellant, we conclude that the jury could not have concluded that appellant acted knowingly pursuant to R.C. 2907.03 but not purposely pursuant to R.C. 2907.02. If the jury found appellant's version of the incident to be true, then appellant would have been acquitted. Thus, it could only choose between acquittal or rape.

Given these facts, the failure of defense counsel to ask the court to instruct on the lesser included offense was not error since sexual battery was not a lesser included offense.

Appellant also contends that trial counsel's ineffectiveness is illustrated by his inattentiveness during the trial. However, according to the trial judge, defense counsel was not inattentive nor did he seem unconcerned about the matter. Since the trial judge was in the best position to observe the demeanor of trial counsel, we will defer to his observations.

In *Strickland* v. *Washington* (1984), 466 U.S. 668, 687, the United States Supreme Court set forth the two-part test in determining ineffective assistance of counsel:

"* * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." See, also, *State* v. *Cooperrider* (1983), 4 Ohio St. 3d 226, 4 OBR 580, 448 N.E. 2d 452.

Construing all the alleged errors of defense counsel together, we cannot conclude that appellant was denied effective assistance of counsel at trial.

Accordingly, we find appellant's second assignment of error not well-taken.

In his third assignment of error, appellant alleges that the trial court erred in failing to grant his petition for postconviction relief since the admission of his post-arrest silence violated his right to due process of law.

Based on the discussion set forth above regarding appellant's post-arrest silence, we find appellant's third assignment of error not well-taken.

On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs of this appeal.

*Judgment affirmed.*

RESNICK, P.J., CONNORS and GLASSER, JJ., concur.