DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Wood County Court of Common Pleas accepting the jury verdict finding Ricardo Oviedo guilty of knowingly selling cocaine (a violation of R.C. 2925.02(A)(C)(4)(a)) and sentencing him to serve six months in prison. In addition, the trial court ordered the suspension of Oviedo's driver's license for six months. Because we find that there was no plain error at trial and that
Oviedo did not receive ineffective assistance of counsel, we affirm the judgment of the Wood County Court of Common Pleas.
Oviedo has presented three assignments of error for consideration on appeal. The assignments of error are:
 "I. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE APPELLANT'S ATTORNEY FAILED TO MAKE OBJECTIONS CRITICAL TO THE FAIRNESS OF HIS TRIAL.
 "II. THE PROSECUTION'S REFERENCE TO TRUTH DURING DIRECT EXAMINATION OF THE STATE'S KEY WITNESS AMOUNTED TO PROSECUTORIAL MISCONDUCT AND WAS PLAIN ERROR.
 "III. THE ADMISSION INTO EVIDENCE OF THE AUDIO TAPED PORTIONS OF THE ALLEGED DRUG SALE WAS PLAIN ERROR."
Before addressing the assignments of error, we will summarize the facts of this case.
According to the testimony of the state's witnesses at trial, an individual named Rosendo Flores, acting as a paid informant, purchased cocaine from Oviedo at Oviedo's home. Oviedo's home is located in a portion of Perrysburg Township known as Perrysburg Heights.
Officers from the Perrysburg Township Police Department and from the Drug Enforcement Agency of the United States testified that they worked together to use the paid informant to make drug purchases. In regard to the events that led to Oviedo's conviction in this case, the officers testified as follows.
The officers testified that they met the paid informant in a cemetery, did a pat down search of him and searched his vehicle. After the searches were done, they gave him money to make a drug purchase. They also installed a microphone under the paid informant's clothes so they could listen to transmissions of any conversations he had with the person he indicated would sell him drugs.
The officers then followed the paid informant and set up video tape surveillance from a location nearby the paid informant's destination: Oviedo's home. They watched the paid informant enter Oviedo's home and later come back out. They followed Flores to an agreed spot where they again searched him and his vehicle after he gave them the drugs he said he had just purchased. An officer from the Perrysburg Township Police Department then paid the informant $50 for his assistance.
The paid informant testified that he contacted the police and asked to work with them to "clean up" the drug problem in Perrysburg Heights. He said he believed drugs had ruined his life, and he was concerned about the young people he saw coming behind him who were getting involved with drugs.
Through both direct and cross-examination of the officers and the paid informant, the jury heard testimony that the paid informant had previous felony convictions for breaking and entering and receiving stolen property. The jury also learned that the paid informant was jailed and facing felony charges for nonpayment of child support at the time he contacted the police. The informant admitted that he had an arrearage of $13,000 for child support payments.
The officers admitted that the paid informant was allowed to "work off" the felony charge pending against him in exchange for his assistance in making drug buys. Finally, the jury learned that the paid informant had worked with police officers from Toledo, Ohio previously. He testified that a "drug lord" took his van because he did not make full payment for drugs he bought. He wanted his van back, so he contacted members of the Toledo Police Department, told them what he knew about drug trafficking in their jurisdiction and helped them make several drug transactions. In return, he got his van back, and he was paid for his assistance.
Oviedo presented witnesses in his defense. The first witness he called was the Perrysburg Township Police Officer who actually placed him under arrest after a warrant was issued relating to the indictment. The officer testified that he saw Oviedo driving past him, recognized Oviedo and knew there was a warrant out for his arrest. He stopped Oviedo and placed him under arrest. The officer said that incident to the arrest he searched both Oviedo and Oviedo's vehicle. He did not find any drugs or drug paraphernalia as a result of the searches.
Oviedo also called the paid informant's former father-in-law and ex-wife. Both testified that the paid informant has a drug addiction problem and that he has a reputation in the community for being untrustworthy.
Finally, Oviedo took the stand on his own behalf. He testified that he and the paid informant are related. He has occasionally worked as an assistant to the paid informant, who installs and services furnaces and air conditioning systems. He said the informant did not pay him for work he did for the informant. When he demanded payment, the paid informant gave him a television and VCR that belonged to the paid informant's girlfriend as collateral. Oviedo said after several months of waiting for cash in exchange for the collateral, he sold the television and VCR to someone. When the paid informant learned Oviedo had sold the television and VCR, he was very angry.
Oviedo testified that he has never sold drugs. He said he works as a cook at a restaurant. He said he knew the paid informant used drugs because he has seen the paid informant using drugs while they were working together. He said if the paid informant had cocaine to give the officers, he got it somewhere other than from him.
In support of his first assignment of error, Oviedo complains that he received ineffective assistance of counsel. Specifically, he complains that his trial counsel did not object when the prosecutor repeatedly asked leading questions of state's witnesses while the witnesses were testifying on direct or redirect examination. He says that because the state was permitted to use leading questions with its own witnesses, the state avoided "the risk of the State's witness losing credibility with the jury or hearing anything that might be beneficial to [Oviedo's] defense."
This court has previously noted that while the general rule is that leading questions should not be used during the direct examination of a witness, Evid.R. 611(C), the trial court has discretion to permit the state to ask leading questions of its own witnesses. State v. Miller
(1988), 44 Ohio App.3d 42, 45. In State v. Miller we also noted: "Although the issue presented in the case sub judice does not pertain to abuse of discretion but to defense counsel's failure to object, this form of questioning is routinely allowed and any objection undoubtedly would have been overruled." Id. at 45. See, also, State v. Guy (Dec. 2, 1999), Cuyahoga App. No. 74457, unreported.
Likewise, in this case, Oviedo has presented the issue in the form of an assertion that he received ineffective assistance of counsel when his trial counsel failed to object to leading questions. But the real assertion is that the trial court abused its discretion by permitting the state to ask leading questions of its own witnesses. After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in this case.
In addition, even if we accept Oviedo's rephrasing of the issue as an ineffective assistance of counsel issue, we find that Oviedo cannot meet both parts of the test for ineffective assistance of counsel. The Supreme Court of Ohio has ruled:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, 137, paragraph two of the syllabus.
An attorney licensed to practice law in Ohio is presumed competent. Statev. Jackson (1980), 64 Ohio St.2d 107, 110-111.
In this case, Oviedo claims that he was prejudiced because the state's use of leading questions ensured that the credibility of the witnesses was not challenged and the witnesses did not volunteer information that could be favorable to his case. Assuming arguendo that the first part of the test was met (that his trial counsel's representation fell below an objective standard of reasonable representation), we find that the record does not show that the second part of the test was met. Specifically, we find that Oviedo's trial counsel effectively used cross-examination to challenge the credibility of the paid informant, and to show that the officers could have been mistaken that the informant actually bought cocaine from Oviedo. He developed the information that the paid informant had a criminal past, was a known drug abuser, and had a reputation for being untrustworthy. He also showed that the paid informant had a history of becoming a paid informant to get vindication on those he believed wronged him. Finally, he showed that the paid informant was not always in the officers' sight and was not strip searched and could have hidden cocaine on his person or even in his car and then presented it to the officers after visiting Oviedo. Oviedo's first assignment of error is not well-taken.
In both his second and third assignments of error, Oviedo argues that this court should apply the doctrine of plain error to reverse his conviction. Accordingly, we will consider both assignments of error together.
A plain error is an:
 "[O]bvious error prejudicial to a defendant, neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public reputation of judicial proceedings.'" State v. Craft (1977), 52 Ohio App.2d 1, 7, 367 N.E.2d 1221 (quoting United States v. Atkinson
(1936), 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391.
Keeping this definition in mind, we now turn to the arguments presented by Oviedo and the state regarding whether there was plain error in his trial.
First, Oviedo argues that plain error occurred when his trial counsel did not object to a direct question the prosecutor asked during trial of the paid informant. The prosecutor asked the paid informant if he was being truthful in his testimony and the paid informant answered yes. Oviedo says that this permitted the state to bolster the credibility of its own key witness, who was the only eyewitness to what took place between himself and that witness.
While Oviedo is correct that the prosecutor asked the paid informant if his testimony was truthful and the paid informant answered yes, we do not agree that this incident meets the test for plain error. As we have already discussed, Oviedo's trial counsel effectively used cross-examination to show that the paid informant had a criminal background, had a history of drug abuse and had become a paid informant for other police departments so that he could get vindication on others he believed had wronged him. In addition, Oviedo's trial counsel called witnesses in Oviedo's defense who testified that the paid informant was a drug abuser and had a reputation in the community for being untrustworthy. The jury was therefore presented with plenty of information that impugned the paid informant's credibility, and the admission of the paid informant's own testimony that he was truthful was not prejudicial. See State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 190.
Second, Oviedo argues that the trial court's decision to admit the audio tape of the conversation between himself and the paid informant was plain error. He argues that one part of the conversation, where the paid informant indicated he wanted to buy heroin and Oviedo responded that he did not deal with "that stuff", was prejudicial because it was admitted to show that Oviedo had a propensity for selling drugs, including heroin. He argues that pursuant to Evid.R. 404(B), the tape should have been excluded.
Oviedo's trial counsel filed a motion in limine relating to this very argument. He contended that the reference to heroin would lead the jury to believe that Oviedo had a history of selling drugs, including heroin, to the paid informant. He argued that the evidence was impermissible to show "other bad acts".
The trial court held a hearing on the motion in limine, and after listening to the tape denied the motion to exclude it from evidence. The trial court explained that the tape merely showed that the paid informant first asked to buy heroin. After Oviedo said he did not sell heroin, the paid informant asked for cocaine. No reference was made in the conversation by either the paid informant or Oviedo to prior drug transactions between the two.
When the state introduced the audio tape at trial, Oviedo's counsel did not renew his motion in limine, thereby waiving any further objection to the evidence. See State v. Daugherty (Dec. 30, 1993), Lucas App. No. L-92-126, unreported. We again conclude that the admission of the testimony in question did not rise to the level of plain error. As the trial court indicated in its ruling on the motion in limine, the statement in question simply did not establish any prior bad acts on the part of Oviedo. Oviedo's second and third assignments of error are not well-taken.
After carefully reviewing the record and considering the assignments of error, we conclude that Oviedo received a fair trial. The judgment of the Wood County Court of Common Pleas is affirmed. Oviedo is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
 ____________________________ Peter M. Handwork, J.
 Melvin L. Resnick, J., James R. Sherck, J. CONCUR.