[Cite as *State v. Walker*, 2011-Ohio-4239.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 95974

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARREN L. WALKER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536762

**BEFORE:**    Sweeney, P.J., Jones, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**     August 25, 2011

**ATTORNEY FOR APPELLANT**

Britta M. Barthol, Esq.
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Mark J. Mahoney, Esq.
Asst. County Prosecutor
Eighth Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶ 1} Defendant-appellant, Darren Walker, appeals following his convictions for two counts of rape, two counts of kidnapping, and gross sexual imposition. Defendant asserts that his conviction of rape was based on insufficient evidence and that all of his convictions were against the manifest weight of the evidence. Defendant further asserts that he was denied the effective assistance of counsel and maintains that the court erred

by finding that certain convictions were not subject to merger. For the reasons that follow, we affirm.

**{¶ 2}** At trial, the state presented multiple witnesses whose testimony is summarized below.

**{¶ 3}** In March and April of 2010, defendant was residing with Dorothy Hardges ("Hardges") and several of her relatives, including her granddaughter "X."[1] Defendant had been married to Hardges's niece and, although they have since divorced, he maintained a close familial relationship with Hardges. By all accounts, defendant helped Hardges with household chores and maintenance. He cooked and cleaned and at times helped with the children who were residing in the home. Hardges had legal custody of X. Defendant has known all of Hardges's children for many years and has known X since she was born. At the time of trial, X was eleven years old.

**{¶ 4}** The testimony indicates that X has special education needs. Hardges said X is in the fifth grade but is functioning at a second grade level educationally.

**{¶ 5}** Hardges is diabetic and requires dialysis three times a week. On those days, Hardges's neighbor, Ms. Elliot, helped X get on the bus for school.

---

[1] Consistent with this Court's policy, victims of sexual offenses are not identified.

**{¶ 6}** Whenever defendant stayed with Hardges, he would use X's room and X would sleep in the living room with Hardges. In March of 2010, X told Ms. Elliot about an incident involving defendant. Ms. Elliot told her to tell her grandmother and her mother. X did not immediately do so. In April of 2010, X approached Deasia, her uncle's fiancée, and made allegations about defendant, which Deasia then reported to Hardges.

**{¶ 7}** Hardges asked defendant if he had been "messing with" X, which he denied. Hardges testified that she had noticed X was being mean towards defendant but never asked her why. Deasia told Hardges that she did not like defendant and the way he acted. Hardges indicated that defendant did not like when Deasia talked back to Hardges and was disrespectful and that defendant would speak to Deasia about it.

**{¶ 8}** Hardges continued to question X and had other adults question her in an effort to determine if X was being truthful. Hardges asked her son Brandon to speak with X. Then Hardges learned that X had previously told Ms. Elliot the same thing. Hardges told X's mother, Carmen, about the accusation and a family meeting took place to confront defendant before the police were contacted. Hardges was present at the meeting along with Mark, Deasia, their baby, Deasia's cousin, the cousin's brother, Brandon and

his father David, defendant, Carmen, and X. [2] Carmen immediately approached defendant and hit him. At that point, another individual named Marvin arrived followed by Ms. Elliot. X stood in front of everyone and repeated her accusations against defendant. Carmen hit defendant again and others took defendant in the back hallway. Hardges heard a lot of commotion and told David to get defendant while she called the police.

{¶ 9} Defendant continued to deny the allegations but when Hardges asked, "Was you high? Did you do this?" Defendant responded, "I don't know Auntie, if I did. If I did, I don't recall." The police arrived after the fighting had ended and defendant was seated in a chair. One officer took X into another room and the other took defendant out of the house. The police read him his rights and arrested him.

{¶ 10} X spoke to an officer later and Hardges was interviewed by a social worker. Hardges took X to the hospital and put her in counseling with the Rape Crisis Center.

{¶ 11} Prior to X's testimony, the court inquired, "Is there any issue as to [X's] ability to testify?" The court asked defense counsel whether he challenged it or had any voir dire beforehand. Defense counsel responded, "I

---

[2]Other testimony indicates that additional people were present at the family meeting.

have not challenged it. I expect from what I have heard through all of the pretrial proceedings, as well as even testimony in this case, that she has repeated her story often and that she will be capable of testifying in this Court. Of course, if circumstances change before our eyes, it's a different story."

{¶ 12} X testified as follows: She is eleven years old and lives in an apartment with her grandmother. She is in fifth grade and rides the bus to school. Ms. Elliot would help her get on the bus when Hardges was at dialysis. Defendant would also take care of X sometimes. Defendant would help Hardges around the house and cooked.

{¶ 13} X said she was in her room with her cousin when defendant came in and told her to lay on the bed. When she laid down on her back, defendant pulled her pants down to her knees and licked her "private part" with his tongue. Defendant told her not to tell anyone. Then he "put his private part in [her] butt." She elaborated, that "there was a hole by my private part. He put it in there." She left with her cousin and did not tell anyone about the incident that day. This happened in March of 2010. She remembers the day because prior to the incident someone had beaten her up.

{¶ 14} X said that later in April, she was in the kitchen drinking juice when defendant started licking her. He told her to come in her room and he

closed the door. They were alone and defendant pulled her shirt up. She was on the bed and defendant was on top of her and he sucked her breasts. He told her not to tell anyone. Originally X testified that she went into the living room and told her grandmother what happened that day. Then she testified that she told Ms. Elliot first, who told her to tell Hardges and her mother. She did not tell her grandmother right away. She told Deasia and then she told Hardges. It was Deasia's birthday, April 7th. She told Deasia he touched her private part and he was by her butt. X said defendant rubbed her butt the same day he licked her private part. X testified that there was one occasion when defendant touched her butt, another when he asked her to get on the bed, and another occasion when he sucked her breasts. She remembers the family meeting when the police came to the house. She spoke with police about what happened and saw a doctor. X also spoke with a social worker.

{¶ 15} During cross-examination, X testified that defendant stayed in her room while she would sleep on the couch. She has known defendant her whole life. X said the day she got in a fight, defendant only touched her butt. Then she said that sometimes she needs people to help her remember things. During re-direct X confirmed that she remembered defendant putting his tongue on her private and that he put his penis inside of her.

{¶ 16} Michael Ryan, a patrol officer with CPD, responded to the reported rape on April 20, 2010 with his partner. They arrived at the apartment and heard yelling. Ryan saw approximately seven to eight people inside the living room screaming at defendant. The victim, X, was taken to another room, and Ryan called for backup. Defendant was handcuffed, taken to the police car, and read his rights. Ryan asked defendant what happened and defendant said, "I don't know anything. I don't know anything. I don't know what I do when I get high."

{¶ 17} Family members were very upset, very angry, threatening defendant and the police. Ryan contacted a sergeant and took defendant downtown and booked him. Ryan wrote the police report. He recalled seeing defendant at Charity Hospital later. He had not noticed any injuries when he booked defendant but defendant had injuries at the hospital. Ryan did not record any injuries on his report.

{¶ 18} Ms. Elliot, Brandon Hardges, Mark Hardges, and Deasia Pridgett also testified. They confirmed their presence at the family meeting and the events leading up to it. They all confirmed that defendant denied the accusations. Although Ms. Elliot did not notice any change in X's demeanor, other family members said they noticed her acting differently towards defendant.

{¶ 19} Tanya George-Olds is employed by Cuyahoga County Department of Children and Family Services and assigned to the sex abuse intake investigation unit as a social worker/investigator. The agency received a referral for X on April 20, 2010. She met with the family in May 2010. She interviewed X about the allegations in July of 2010. George-Olds testified that X does have cognitive limitations in the area of processing but she was able to answer and explain what happened to her. The social worker also interviewed Deasia[3] and Hardges. She compared the accounts received during her investigation with the accounts obtained by the detective.

{¶ 20} A pediatric nurse practitioner from University Hospital also testified. X is her patient and she examined her on April 30, 2010. State's Exhibit 1 is copy of the medical records. X reported that defendant touched her breasts and her vaginal area approximately one month prior to the examination. From the examination, the nurse could not determine whether a sexual assault had occurred.

{¶ 21} Defendant testified that he married Hardges's niece when he was eighteen years old. They have since divorced but he maintained a close relationship with Hardges. Defendant stated he has problems with drugs.

---

[3] Deasia did not recall speaking with a social worker.

He said he helped Hardges raise her children. Defendant described Hardges's residence as his second home. He would do home repairs for Hardges and help maintain the home. Defendant testified that he would sometimes get an attitude with the others because no one else would help Hardges with the housework and repairs. But, he had a good relationship with all the adults in the house and was always welcome there. When he was there, he would be given X's room to sleep in and X would stay in the living room. Defendant said that X keeps her clothing and belongings in the front of the apartment near where Hardges sleeps.

{¶ 22} Defendant has known X since she was born. X would give him an attitude and there was friction between them. Defendant denied X's allegations and said the things she testified to did not happen. Defendant denied ever touching X improperly.

{¶ 23} The trial court denied defendant's motions for acquittal.

{¶ 24} Prior to rendering its decision, the court noted that it had to decide the case based on the testimony of the witness and found "a few aspects of that testimony to be confusing and disturbing." The court ultimately determined that X was credible and found defendant guilty.

{¶ 25} On October 8, 2010, the court imposed sentence as follows: the court determined that the victim was not released from a safe place

unharmed. Defendant's convictions for count one was merged with count two and his conviction on count three was merged with count four; the court determined that defendant's conviction under count five was not an allied offense of similar import and was, therefore, not subject to merger. The state elected to pursue sentencing on counts two and four. Defendant was advised of his Tier III sexual offender classification and requirements. The court imposed concurrent prison terms of ten years to life on counts two and four to be served concurrently with a three year prison term on count five. Defendant was advised of postrelease control and pursued the instant appeal.

**{¶ 26}** "Assignment of Error I: The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Appellant was guilty of rape."

**{¶ 27}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶ 28} Defendant challenges his convictions for rape under this assignment of error. R.C. 2907.02(A)(1)(b) provides:

{¶ 29} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

{¶ 30} "* * *

{¶ 31} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 32} "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 33} Defendant maintains that the evidence was insufficient to establish penetration on any date. However, penetration is not required to support a conviction of rape involving cunnilingus. See *State v. Bailey* (1992), 78 Ohio App.3d 394, 395, 604 N.E.2d 1366 ("the law requires no further activity to constitute cunnilingus beyond the placing of one's mouth

on the female's vagina."), followed by *State v. Dunlap* (Jan. 16, 1997), Cuyahoga App. No. 70427. X testified that defendant licked her private part. X further testified that defendant also put his penis in a hole by her butt that she indicated was in her "private part." The record reflects that X pointed to that area on her body during her testimony at the bench trial. This testimony was sufficient to support two counts of rape. The first assignment of error is overruled.

**{¶ 34}** "Assignment of Error II: The Appellant's convictions for kidnapping, rape and gross sexual imposition were against the manifest weight of the evidence."

**{¶ 35}** To warrant reversal of a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶ 36}** Reversal of defendant's convictions is not warranted under this standard.

{¶ 37} Defendant primarily contends that X's testimony was questionable and lacking in credibility and reliability due to her age and developmental disabilities. At the time of trial, X was 11 years old and reportedly functioning at a second grade level. Nothwithstanding, the social worker testified that X was able to remember and explain what happened to her. Indeed, X's testimony was consistent with other witnesses on points of no dispute such as the fact of her grandmother's dialysis, that Ms. Elliot would help her get on the bus, and with whom she resided. Further, while X may have educational delays, this does not equate to an inability to recollect or testify truthfully. In addition, the record contains statements made by defendant where he indicated that he could not remember what he did when he was high. He said to Hardges, "if I did, I don't recall." When the police asked him what happened, defendant said, "I don't know anything. I don't know anything. I don't know what I do when I get high." Even though defendant denied the allegations, by making these statements, defendant acknowledged a possibility that the events could have happened.

{¶ 38} The record and testimony also reflect that Hardges did not immediately accept X's account, but instead made efforts to corroborate it before contacting the police. Likewise, the social worker interviewed X but

did not ask leading questions. She then consulted with the investigating officer and compared the statements.

{¶ 39} This was a bench trial where the defense counsel effectively established that X had repeated her story many times. The defense questioned the veracity of X's account and suggested that her testimony was scripted and rehearsed. X's testimony, like that of other child victims, is somewhat confusing. However, she did repeatedly testify that defendant had licked her private part and put his private part in a hole near her butt. She recalled him touching her buttocks and also sucking her breasts. Her testimony was unclear as to when she reported the incident to others and the exact dates it had occurred. The trial court noted that X's testimony was confusing but ultimately resolved the conflicts in favor of her credibility.

{¶ 40} Considering the record as a whole, we cannot say that the trial court clearly lost its way by finding defendant guilty of the charges. Accordingly, his convictions were not against the manifest weight of the evidence and this   assignment of error is overruled

{¶ 41} "Appellant was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution when trial counsel

failed to request a competency hearing of the minor witness's testimony prior to the commencement of trial."

{¶ 42} "To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of defendant's trial or legal proceeding would have been different had defense counsel provided proper representation." *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. In *State v. Bradley*, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if the defendant fails to prove the second prong of prejudicial effect. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 143, 538 N.E.2d 373.

{¶ 43} Defendant asserts his counsel was ineffective for failing to request a hearing as to X's competency to testify in this case. Evid.R. 601(A) provides:

{¶ 44} "Every person is competent to be a witness except:

{¶ 45} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

**{¶ 46}** The record reflects that the trial judge specifically inquired as to whether a voir dire was needed of this witness. The defense indicated that there was no need to conduct a competency hearing based on what was learned at the pretrial proceedings and X's testimony.

**{¶ 47}** X's age was not a factor in determining her competency to testify pursuant to Evid.R. 601 because she was 11 years old. Accordingly, defendant focuses on X's reported developmental delays in alleging that X was of "unsound mind." The only evidence offered on this issue was the testimony of Hardges and the social worker. Hardges testified that X had an individualized education plan and that she is in the fifth grade but functioning at a second grade level in school. The social worker said that X does have cognitive limitations in the area of processing but she was able to answer and explain what happened to her.

**{¶ 48}** R.C. 1.02(C) states that the term "unsound mind" includes all forms of mental retardation, however, the testimony in the record does not clearly call X's competency into question to the point that the decision not to pursue a competency hearing constituted ineffective assistance of counsel. See *State v. Miller* (1988), 44 Ohio App.3d 42, 44, 541 N.E.2d 105 (mother's statement that child was "mildly retarded" is not sufficient to call child's competency into question); see, also, *State v. Barnett* (March 16, 1999),

Defiance App. No. 4-98-14. Similar to the facts at issue in *Miller*, X became confused during cross-examination; however we recognize that "this often happens to [mentally delayed] and non-[mentally delayed] witnesses alike." Id. This is especially common when minor victims are involved regardless of their mental capacity. X was able to recall events and testify about them. For example, X, like many of the other witnesses, testified that Ms. Elliot helped her get on the bus when Hardges was scheduled for dialysis. She also testified consistent with the other evidence that defendant did chores around the house and helped her grandma. She knew who resided in the home and was able to testify about incidents that happened to her such as a fight she had with another girl. She also recalled the family meeting, which had been described through the testimony of multiple other witnesses.

{¶ 49} Defendant has not demonstrated that he was prejudiced by defense counsel's decision not to pursue a hearing as to X's competency to testify. Defendant has not established a reasonable probability that the outcome of the trial would have been different had there been a competency hearing prior to the bench trial. This assignment of error is overruled.

{¶ 50} "Assignment of Error IV: Appellant's convictions for rape and gross sexual imposition are allied offenses of similar import and the convictions must merge into a single conviction."

**{¶ 51}** The Ohio Supreme Court recently established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

**{¶ 52}** "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶ 53}** "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶ 54}** "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶ 55}** "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are

committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge." Id. at ¶ 48–51, 895 N.E.2d 149.

**{¶ 56}** Defendant alleges his convictions for rape on or about March 14 to March 15, 2010 and gross sexual imposition were allied offenses pursuant to R.C. 2941.25. Defendant alleges they arose out of the same course of conduct. The state contends the acts were committed on different dates and were not allied offenses of similar import. X testified that defendant sucked her breasts and touched her buttocks on a different day than when he vaginally raped her. Accordingly, the gross sexual imposition conviction was not subject to merger as an allied offense. See *State v. Williams*, Cuyahoga App. No. 94616, 2011-Ohio-925, ¶60. This assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

JAMES J. SWEENEY, PRESIDING JUDGE

LARRY A. JONES, J., and
SEAN C. GALLAGHER, J., CONCUR