OPINION
Defendant-appellant David Matheny, III appeals the July 18, 2001 Judgment Entry of the Tuscarawas County Court of Common Pleas, which found him guilty of ten counts of rape, twenty counts of sexual battery, eight counts of felonious sexual penetration, six counts of disseminating matter harmful to juveniles, and three counts of compelling prostitution. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On October 5, 2000, the Newcomerstown Police Department received a call from Kaylene Moore regarding her daughters, Tiffani and Melissa. Ms. Moore told the police appellant had shown her children pornographic materials and offered one child money and cigarettes in exchange for a sexual act. The police arrested appellant and conducted an interrogation of him. Chief Hursey of the Newcomerstown Police Dept. was in charge of the investigation.
After giving appellant his Miranda rights, appellant confessed to having sex with his daughter, Amanda Matheny. When the interrogating officer asked appellant whether he had had sex with other children, appellant responded: "When I drink I can do things and don't remember what I have done. I need help, not jail. When I drink I can have sex and not remember what I've done. I could have done things to the girls and not remember if I was drinking whiskey at the time."[1]
Appellant's daughter, Amanda, alleged appellant had forced her to have sexual intercourse with him daily from the time she was eleven years old. It was also alleged appellant had asked another minor, Susan Smith, to "get naked" in exchange for money.[2]
On December 20, 2000, the Tuscarawas County Grand Jury indicted appellant with nineteen counts of rape, in violation of R.C. 2907.02; twenty six counts of sexual battery, in violation of R.C. 2907.03; eleven counts of felonious sexual penetration, in violation of R.C. 2907.12; two counts of gross sexual imposition, in violation of R.C. 2907.05; seven counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31; five counts of compelling prostitution, in violation of R.C. 2907.21; and one count of pandering obscenity involving a minor, in violation of R.C. 2907.32.1. At his arraignment, appellant plead not guilty to the charges.
On January 17, 2001, appellant filed a motion for a change of venue. Appellant maintained he could not receive a fair trial because the media had created too great a prejudice in reporting the case. On February 20, 2001, appellant's attorney filed a motion to sever the charges by victim.[3] Appellant maintained trying him on all the charges at one time would unduly prejudice appellant's case and eliminate "the aura of the innocence" which should surround a defendant during a jury trial. In a February 20, 2001 Judgment Entry, the trial court deferred its ruling on the motion for change of venue until after voire dire. Later, the trial court overruled the motion.
At trial, appellee called Peter L. Carrothers, a state liquor agent in Newcomerstown, Ohio. Mr. Carrothers testified appellant came to his store every Friday for the past 2 1/2 years and bought Senator's Club Blended Whiskey. The State also called every victim in the 71 count indictment to testify with regard to the particular facts and evidence relating to the count or counts involving that particular victim.
Appellant's first witness was Amanda Matheny. Amanda testified she grew up living with her father and her father's girlfriend, Mary Hatcher, in their home on Canal Street, in Newcomerstown, Ohio. Amanda testified appellant would display pornographic movies and items such as dildos in the home. Amanda identified pornographic movies which had been taken from the home by the police. Amanda testified she had seen those tapes in the home and had viewed the videotapes with appellant.
Amanda testified appellant had sex with her almost every day since she was eleven years old. (Amanda was seventeen on the date of trial). Amanda stated sex included oral sex, vaginal and anal intercourse. She further testified on her birthday, her father actually ejaculated inside of her and told her it was her birthday present. In addition to the pornographic movies, appellant regularly showed Amanda and other children in the home, pornographic materials received on the satellite dish in the home where men and women were having sex. Amanda testified this conduct went on for a period of six years. Amanda testified she had not talked about this before because she was afraid of her father and that he had threatened her and others in the home.
The State also presented the testimony of Tiffani and Melissa Moore. These girls testified appellant had offered them $20 and a pack of cigarettes if they would permit him to perform oral sex on them. The girls testified, during the time appellant was trying to, or actually having sex with them, he was drinking or had been drinking whiskey.
The State also presented the testimony of appellant's oldest daughter, Sondra. Sondra testified appellant was forceful with her when drinking. She testified at one point appellant put a pillow across her face, smothering her until she agreed to have sex with him. She, like her sister, testified appellant had sex with her on a daily basis whether in the form of touching, oral, vaginal or anal sex. Sondra testified appellant forced these sexual acts. On one occasion, appellant took a piece of wood and shoved it into her vagina.
Appellant called family friends and presented testimony from his expert, Julie Brand, of Columbus, Ohio. Appellant did not take the stand in his own behalf.
The jury rendered a unanimous verdict of guilty on ten counts of rape, twenty counts of sexual battery, eight counts of felonious sexual penetration, six counts of disseminating matter harmful to juveniles, and three counts of compelling prostitution. In a July 18, 2001 Judgment Entry, the trial court credited appellant with 279 days of jail credit and sentenced him to three life sentences with an aggregate of 318 1/2 years on the remaining counts. The trial court ordered the sentences to be served consecutively. It is from this judgment entry appellant prosecutes this appeal, assigning the following as error:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S MOTION FOR A CHANGE OF VENUE.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE JURY TO HEAR EVIDENCE OF THE APPELLANT'S ALLEGED DRINKING HABITS AND THE APPELLANT ALLEGEDLY PHYSICALLY ABUSING MARY HATCHER.
 III. THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE WHEN HIS TRIAL ATTORNEY FAILED TO PROPERLY READ THE DISCOVERY PROVIDED TO HIM AND TO DO A PROPER INVESTIGATION IN THIS CASE.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL WHEN THE STATE HAD FAILED TO COMPLY WITH THE DISCOVERY PROVISIONS OF CRIMINAL RULE 16.
 V. THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE TESTIMONY OF DR. MARK SLABINSKI WHEN THE STATE HAD FAILED TO PROPERLY QUALIFY HIM AS AN EXPERT WITNESS IN CHILD SEX ABUSE CASES.
 VI. THE TRIAL COURT ABUSED IT DISCRETION WHEN IT ALLOWED THE STATE TO USE LEADING QUESTIONS DURING THE DIRECT EXAMINATION OF ITS WITNESSES.
 VII. THE TRIAL COURT ERRED IN ALLOWING AMANDA MATHENY TO TESTIFY ABOUT THE ALLEGED PORNOGRAPHIC TAPES INTRODUCED AT TRIAL AND BY ALLOWING INTO EVIDENCE THE FOUR ALLEGED PORNOGRAPHIC TAPES WHEN IT WAS NOT SHOWN THAT THE TAPES CONTAINED PORNOGRAPHIC MATERIAL.
 VIII. THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF THE CRIMES HE WAS CHARGED WITH AND HIS CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In appellant's first assignment of error, he maintains the trial court abused its discretion in denying his motion for change of venue. Specifically, appellant contends the pretrial publicity which occurred in the case, including stories in the local newspaper and local television stations tainted the jury pull. We disagree.
Appellant contends he was entitled to a change of venue because of the publicity surrounding his indictment. Appellant relies on Crim.R. 18(B), which provides
 [u]pon the motion of any party or upon its own motion the court may transfer an action * * * when it appears that a fair and impartial trial cannot be held in the court in which the action is pending.
Crim.R. 18(B) does not require a change of venue merely because of extensive pretrial publicity.[4] Any decision on a change of venue rests in the sound discretion of the trial court.[5] "`[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality.'"[6] A defendant claiming pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased.[7] Only in rare cases may prejudice be presumed.[8]
Appellant maintains a number of potential jurors indicated that they had heard or read about the case involving appellant and knew some of the information about the case. These potential jurors included jurors Pape, Monaco, Troyer, Sippel, Weckman, and Flowers. In his brief, appellant maintains, "under questioning, the above-named jurors stated that they knew some of the facts of the case but indicated that they could put aside what they had heard and hear all of the evidence objectively. These jurors were allowed to stay on the jury and hear appellant's case."[9]
Like Treesh, supra, we find appellant has failed to show the publicity of this case was so pervasive that it impaired the ability of the empaneled jurors to deliberate fairly and impartially. During voirdire, the jurors were questioned about their exposure to the pretrial publicity. Appellant even concedes each seated juror confirmed he or she could put aside what they had heard about the case, and look at all of the evidence objectively. Appellant's first assignment of error lacks merit and is overruled.
 II
In appellant's second assignment of error he maintains the trial court abused it discretion in permitting the jury to hear evidence of appellant's drinking habits and evidence appellant allegedly physically abused his girlfriend. We disagree with appellant's contentions.
The admission of evidence is normally within the discretion of the trial court, and the court's decision will be reversed only upon a showing of an abuse of that discretion.[10] The term "abuse of discretion" means an unreasonable, arbitrary, or unconscionable decision.[11]
Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides "[a]ll relevant evidence is admissible * * * Evidence which is not relevant is not admissible."
Appellant first contends the trial court erred in permitting evidence of his drinking habits. Specifically, appellant contends the trial court erred in permitting the testimony of Mr. Carrothers. Mr. Carrothers testified appellant bought a certain brand of whiskey in his store on a weekly basis. Appellant maintains because none of the 71 charges with which he was indicted included an alcohol related offense, Mr. Carrothers testimony was irrelevant. We disagree.
We note at the outset appellant failed to object to Mr. Carrothers' testimony. Accordingly, we find any such error is waived.[12]
However, had an objection been timely made, we would find the testimony relevant and no abuse of discretion by the trial court in admitting it.
As noted in the Statement of the Case and Facts, supra, appellant stated "when I drink I can do things and don't remember what I have done. I need help, not jail. When I drink I can have sex and not remember what I've done. I could have done things to the girls and not remember if I was drinking whiskey at the time."[13] Further, each of the victims testified appellant had been drinking or smelled of alcohol while perpetrating the various offenses. Accordingly, we find Mr. Carrothers' testimony appellant bought whiskey on a weekly basis was relevant. The first portion of appellant's second assignment of error is overruled.
Next, appellant argues the trial court abused it discretion in permitting evidence of alleged physical abuse against his girlfriend. This testimony came through Katherine Hatcher, one of appellant's victims and the daughter of appellant's girlfriend, Mary Hatcher. Katherine testified she had seen appellant physically abuse her mother.
The 59th count of the indictment alleged appellant raped Katherine Hatcher by force or threat of force. Additionally, the 60th count alleged appellant engaged in sexual conduct with Katherine by force or threat of force. At trial, Katherine testified appellant had threatened to beat her or her mother if she ever told anyone about his conduct.
We find any testimony by Katherine that appellant had been physically violent to her mother was relevant to demonstrate the required force or threat of force elements in the 59th and 60th counts of the indictment. Katherine had seen appellant be violent to her mother, making any threat appellant may have made to harm Katherine or her mother that much more believable. For these reasons, we find no abuse of discretion in the trial court's decision to permit the evidence.
Appellant's second assignment of error is overruled.
 III
In appellant's third assignment of error he maintains he received ineffective assistance of counsel because his attorney failed to properly read and analyze the discovery provided to him and, as a result, failed to do a proper investigation. We disagree.
The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to Strickland v. Washington,[14] in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different.[15]
In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential.[16] Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance.[17]
In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[18] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[19]
Appellant argues his trial counsel made an objection based upon the fact the State had withheld the name of a potentially exculpatory witness, Nelson Tassell. Appellant maintains the prosecuting attorney pointed out to the trial court the name had been provided to appellant's attorney. Appellant contends his trial counsel did not properly read through the discovery material because a careful reading would have revealed this potential witness. We disagree.
When testifying on cross-examination, Eric Matheny, the natural son of appellant, answered a question from appellant's counsel "Okay, now who's Nelson Tassell."[20] Eric answered "Nelson is dad's friend."[21]
Appellant's trial counsel then went on to explore the subject and eventually ask the child whether Mr. Tassell had also offered the child money to perform sexual acts in Mr. Tassell's presence. The child answered "Yes, it was Nelson and him."[22] Appellant's trial counsel then raised the subject of Nelson Tassell and his involvement in a crime involving appellant and his natural son Eric.
We agree with appellee because appellant's counsel raised the issue, he was aware Mr. Tassell might need to be called as a witness. In fact, appellant's trial counsel did call Tassell as a defense witness.[23] At that time, appellant's trial counsel asked Mr. Tassell if he had ever offered or solicited children in any way for sexual relations. Mr. Tassell indicated he had not.[24] Accordingly, it was up to the jury whether to believe Nelson Tassell or whether to believe Eric Matheny regarding the disputed testimony.
We are mindful the jury found appellant not guilty on count 56 of the indictment, which alleged appellant induced, procured, or encouraged his son to engage in sexual activity for hire. It is entirely possible, appellant's trial counsel's decision to call Mr. Tassell, and trial counsel's examination of Nelson Tassell had an effect which resulted in a verdict of not guilty on that count.
We do not find appellant's trial counsel performance was deficient. Further, assuming arguendo, appellant's trial counsel's performance was deficient, appellant cannot show trial counsel's error actually prejudiced appellant.[25]
Appellant's third assignment of error is overruled.
 IV
In appellant's fourth assignment of error he argues the trial court abused its discretion in denying his motion for a mistrial because the State had failed to comply with the discovery provisions of Crim.R. 16. Appellant's trial counsel asked for a mistrial because he believed the prosecutor should have informed appellant Eric Matheny had previously accused someone else of offering money in exchange for sex. Appellant argues this amounts to withholding potentially exculpatory evidence.
The decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 182. This is because the trial court is in the best position to determine whether a mistrial is needed. State v. Glover
(1988), 35 Ohio St.3d 18, 19. In order to demonstrate a trial court has abused its discretion in denying a motion for a mistrial, a defendant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable. State v. Nichols (1993), 85 Ohio App.3d 65, 69. A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected. Id. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118, 127.
Pursuant to Crim.R. 16, the prosecutor is under a duty to disclose evidence favorable to a defendant. The rule provides, in pertinent part:
(A) Demand for discovery
 Upon written request each party shall forthwith provide the discovery herein allowed. * * *
(B) Disclosure of evidence by the prosecuting attorney
 (f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection.
As indicated in our discussion of appellant's third assignment of error, appellant's trial counsel called Nelson Tassell to testify on appellant's behalf. Mr. Tassell testified he had never solicited children for sexual relations at the Matheny residence. Therefore, if believed, Tassell's testimony called into question the veracity of the victim, Eric. In any case, the potentially exculpatory evidence sought by defense counsel, i.e. testimony indicating Eric lied, was actually presented to the jury. Further, as noted above, appellant was found not guilty of one of the three counts involving Eric.
We find no abuse of discretion in the trial court's decision to deny appellant's motion for a mistrial.
Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error appellant argues the trial court abused its discretion in permitting Dr. Mark Slabinski to testify without failing to properly qualify him as an expert witness in child sex abuse cases. We disagree.
Evid.R. 702 governs expert witnesses. The rule states, in pertinent part:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific,
Dr. Slabinski testified on behalf of the State. He graduated from medical school in 1992. He has worked as a full-time practitioner in the emergency medical field in Cambridge, Ohio since 1995, where he is the director of the emergency medical department. He testified he personally sees between 4,000 and 4,500 patients per year. As part of his residency, Dr. Slabinski worked at Akron Childrens Medical Center and regularly worked with the section of the emergency department that handled abuse cases.
Dr. Slabinski examined Katherine Hatcher on October 6, 2000. Katherine was sent as a referral for alleged sexual abuse. Dr. Slabinski found no signs of sexual abuse. However, he testified, based upon a hypothetical question proposed by the State, he would not expect to find an indication of trauma if there had only been oral sex, or a very slight touching of a man's penis against the child's vagina.
Appellant's trial counsel objected before the hypothetical question because Dr. Slabinski had not been qualified as an expert witness and because appellant's trial counsel had been unable to voir dire the witness. Thereafter, the trial court permitted appellant's trial counsel to voir dire the witness.
In response to appellant's trial counsel's questions, Dr. Slabinski testified he had examined over 20,000 patients and to the best of his knowledge there was no state certification for the specialty of being a sexual assault examiner. Dr. Slabinski noted he had attended many state conferences, and received education through continuing education newsletters and journals which he reviewed on a monthly basis. Dr. Slabinski testified he had received no other training specifically on sexual abuse cases since his employment with Akron Childrens Hospital during his residency.
Dr. Slabinski testified sexual abuse examination was not a specialty he was aware of. He opined any physician who is qualified in the State of Ohio to practice medicine is qualified to conduct such an examination for sexual abuse. Dr. Slabinski opined the speciality of emergency medicine encompasses many things, including the examination of children and adults for physical and sexual abuse.[26] Slabinski testified any physician should be qualified to perform such an examination.
After appellant's trial counsel's voir dire, the trial court permitted Dr. Slavanski to answer the hypothetical question. The prosecutor than asked the following question:
 Sir, as regards a hypothetical regarding an eleven-year-old, if, in fact, that child indicated an older individual, male individual, had placed his penis in her mouth a couple of months before you did your physical exam where you check for sexual abuse, do you think, within a reasonable degree of medical certainty, there would be any possible way you could make a finding at that point in time as to any sexual abuse?"
 Again, I would expect the exam to normal with no findings."
Negative again; is that correct.
"That is correct."
 Sir hypothetically, if there was a situation a couple months before you did this exam with this same child, there had been some indications from her that an older male individual had started to try to put his penis in her vagina, but never actual entered her vagina, would you expect, within a reasonable degree medical certainty that would be evidence to show trauma or something that might show abuse?
A. Again, I would expect it to be negative, normal exam.
(T. 478-80).
We find no abuse of discretion in the trial court's qualification of Dr. Slavanski as an expert witnesses and in the trial court's decision to permit Dr. Slavanski to answer the hypothetical questions.
Appellant's fifth assignment of error is overruled.
 VI
In his sixth assignment of error, appellant maintains the trial court abused its discretion in permitting the State to use leading questions with its witnesses. Specifically, appellant attacks the use of leading question with Amanda Matheny, Katherine Hatcher, Tiffani Moore, Melissa Moore, Susan Smith, Debra Curry, and Eric Matheny.
As pointed out by appellee, with the exception of Sandra and Amanda, each of the children were very young at the time they testified at trial.[27] Although appellant states the trial court erred in permitting leading questions of each of the witnesses, appellant cites this court only to transcript pages 230-233, 251, and 265. Appellant does not state what errors occurred on those pages.
The trial judge has discretion to allow leading questions on direct examination.[28] Specifically, Evid.R. 611(C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." Furthermore, the court exercises reasonable control over the mode of interrogation so that its presentation will effectively ascertain the truth.[29]
Therefore, it is within the discretion of the trial court to permit the state to ask leading questions of its own witnesses.[30]
On page 230, appellant's trial counsel objected to the prosecutor's leading question. The trial court sustained appellant's objection, and the prosecutor rephrased the question.On page 231, the prosecutor asked the following question, "During the time you were living in the home did you ever see anything in the nature of pornographic materials or pornographic videos?" Amanda Matheny answered: "Yes, I did." Appellant's trial counsel lodged an objection to this question and the trial court overruled the objection.
We find no abuse of discretion in the trial court's decision to overrule appellant's objection in this instance. When reviewing the context of the testimony, we find the question was used to develop Amanda's testimony.
Appellant objected to the use of a leading question on page 233 of the transcript. However, the trial court sustained the objection.
On page 251, after the prosecutor had questioned Amanda extensively about various pornographic videos and a book taken from appellant's home, the prosecutor changed the direction of the line of questioning and asked the following question.
 Amanda, during the time you were living there, between 1994 and 2000, did your father, David Matheny, ever have sexual relations with you?
The trial court overruled appellant's objection to this question. Our review of the transcript indicates this question was used to develop appellant's testimony. We find no abuse of discretion in the trial court's decision to overrule appellant's objection.
Finally, on page 265, the following exchange took place:
 Q. The next count, between the 25th day of 8 May 1994 through the 24th day of May 1996. Did he ever, during that period of time, purposely compel you to have sexual conduct with you?
A. Yes.
 MR. HERVEY: Objection, Your Honor, to leading the witness.
 MR. MASTIN: I'm reading right from the Indictment, Your Honor. I have to ask those facts. It's not leading.
 MR. HERVEY: Well, I would argue there's been time to prepare a witness for trial.
 MR. MASTIN: There's this many counts, I have to give time frames. She's not going to be able to remember the counts.
 MR. HERVEY: I would hope it was based on information she was given, therefore wouldn't be a need to lead the witness.
MR. MASTIN: It's not leading by asking a date.
 JUDGE THOMAKOS: — Okay. The objection is overruled. But, again, I don't want references made to counts in the Indictment. I think she needs to testify as to facts.
MR. MASTIN: Okay.
 JUDGE THOMAKOS. And ask her recollection of the facts and not legal conclusions.
MR. MASTIN: Okay.[31]
In light of the fact there were seventy-seven counts of the indictment, and in light of the fact the sexual offenses were alleged to have occurred over such a lengthy period of time, we find no abuse of discretion in the trial court's decision to permit the use of this type of leading question.
Appellant's sixth assignment of error is overruled.
 VII
In his seventh assignment of error, appellant maintains the trial court abused its discretion in permitting Amanda to testify about alleged pornographic tapes introduced at trial and thereafter admitting four of the alleged tapes into evidence. Appellant argues the introduction of the tapes was irrelevant and highly prejudicial. Because the tapes were not shown to the jury to see whether, in fact, the materials contained therein were pornographic, Amanda's testimony was the only evidence given to the jury of what was actually shown on the tape.
We find no error in the trial court's decision to admit the tapes into evidence. Amanda testified extensively about the contents of the videos which she had witnessed at appellant's direction. Furthermore, if there was a question as to the pornographic nature of the tapes, and assuming the jury did not believe Amanda about such content, the jury was free to review the tapes.
Appellant's seventh assignment of error is overruled.
 VIII
In his eighth assignment of error, appellant maintains there was insufficient evidence to find appellant guilty of the crimes with which he was charged, and such convictions were against the manifest weight of the evidence. Appellant appears to concede his victims' testimony satisfied the elements of the offenses charged. However, appellant maintains the uncorroborated testimony of these victims was insufficient to sustain the convictions and any such conviction based upon uncorroborated testimony was against the manifest weight of the evidence. We disagree.
In State v. Jenks[32], the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[33]
When applying the aforementioned standard of review to the case subjudice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment.[34] Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[35]
Appellant first attacks his convictions for offenses against Sondra Matheny. Appellant was found guilty of three counts of rape in violation of R.C. 2907.02;, four counts of felonious sexual penetration, in violation R.C. 2907.12(A)(2); and twelve sexual battery, in violation of R.C. 2907.03(A)(1) and (A)(5).
Sondra testified appellant sexually abused her almost daily. She testified she was forced to submit to anal and vaginal intercourse and also testified about appellant attempting to force objects into her body. Sondra testified this started when she was eleven years old and continued from 1988 through 1995. Sondra testified her father forced her to comply and specifically recounted one instance when appellant held a pillow over her head and smothered her until she acquiesced.
Appellant also contests the sufficiency and manifest weight of the evidence presented to convict him of five counts of rape, three counts of felonious sexual penetration, eight counts of sexual battery, and one count disseminating matter harmful to juveniles as related to Amanda Matheny.
Amanda detailed numerous events of sexual contact and sexual conduct, testifying appellant forced her to endure almost daily sexual abuse, including vaginal, oral, and anal sex. Appellant testified this conduct began when she was approximately eleven years old and continued daily for approximately six years. Amanda testified in detail about the force and threat of force used to carry out these sexual encounters. As noted earlier, appellant confessed to the police that he had had sex with his daughter.
Appellant next attacks the testimony of Eric Matheny. Appellant was charged with two counts of compelling prostitution and one count of disseminating matter harmful to juveniles with regard to Eric. Eric testified appellant had asked him to have sex with Katherine Hatcher in front of appellant. He further testified appellant had shown him pornographic videos and provided access to sex channels on television. Eric further testified appellant offered him money to have sex with Katherine. If believed, this was more than substantial evidence to permit the jury to reach verdicts of guilty on each of the charges. As pointed out earlier, the jury found appellant not guilty on count 56.
Appellant also makes the same argument with regard to the evidence presented to sustain his convictions on rape, compelling prostitution, and disseminating matter harmful to juveniles as they related to Katherine Hatcher.
Katherine testified, in graphic detail, about the sexual contact she had been forced to endure with appellant, and the force and threats he made against her to secure her compliance. Katherine testified appellant offered her cigarettes and money if she would have sexual intercourse with appellant's son, Eric, in front of appellant. Further, Katherine testified in detail as to the number of times appellant touched her with his penis in her vaginal area, and had oral sex with her. As noted earlier, the jury found appellant not guilty of one count relating to Katherine.
Finally, appellant maintains his convictions were against the manifest weight of the evidence. Appellant maintains the testimony by the witnesses was confusing and inconclusive. Further, appellant again maintains because there is no testimony to corroborate the testimony of the individual victims, the convictions are against the manifest weight of the evidence.
Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[36] The jury was free to accept or reject the testimony of each of the witnesses. Clearly, in some instances, the jury chose to reject certain testimony, finding appellant not guilty on certain counts. We find the testimony noted supra, was sufficient, and the jury's verdicts were not against the manifest weight of the evidence.
Appellant's eighth assignment of error is overruled.
The July 18, 2001 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to appellant.
By: Hoffman, P.J., Farmer, J. and Wise, J. concur.
[1] Tr. at 539.
[2] Tr. at 229.
[3] Charges 1-38 involved victim Sandra Durban; charges 39-55 involved Amanda Matheny; charges 56-58 involved Eric Matheny; charges 59-63 involved Katherine Hatcher; charges 64-66 involved Debra Curry; charges 67, 68 involved Susan Smith; charges 69-70 involved Melissa Moore and charge 71 involved alleged victim Tiffani Moore.
[4] State v. Landrum (1990), 53 Ohio St.3d 107, 116-117.
[5] Id. at 116, 559 N.E.2d at 722.
[6] Id. at 117, quoting State v. Bayless (1976), 48 Ohio St.2d 73,98, 2, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135,57 L.Ed.2d 1155.
[7] State v. Treesh (2001), 90 Ohio St.3d 460, 463, citing Mayola v.Alabama (C.A.5, 1980), 623 F.2d 992, 996.
[8] Id.
[9] Brief at 11.
[10] Peters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296,299, see, also, State v. Jalowiec (2001), 91 Ohio St.3d 220, 229.
[11] State ex rel. Stevens v. Geauga Cty. Bd. of Elections (2000),90 Ohio St.3d 223, 226.
[12] See, State v. Coleman (1989), 45 Ohio St.3d 298.
[13] Tr. at 539.
[14] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673.
[15] State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373; Statev. Combs, supra.
[16] Bradley, 42 Ohio St.3d at 142.
[17] Id.
[18] Bradley, supra at syllabus paragraph three.
[19] Id.
[20] Tr. at 430.
[21] Id.
[22] Id. at 435.
[23] Tr. at 647.
[24] Tr. at 651.
[25] Bradley, supra.
[26] Tr. at 460.
[27] Sandra Matheny's DOB was 6/23/79; Amanda DOB 5/25/83; Tabitha DOB 5/15/82; Eric DOB 6/2/89; Katherine DOB 1988 and was twelve years of age at the time of trial; Debra DOB 1991; Smith DOB 1990; Melissa DOB 1990 and Tiffani DOB 1991.
[28] See Staff Note to Evid.R. 611(C).
[29] Evid.R. 611(A).
[30] State v. Miller (1988), 44 Ohio App.3d 42, 44.
[31] Tr. at 265-266.
[32] State v. Jenks (1981), 61 Ohio St.3d 259.
[33] Jenks, supra, at paragraph two of the syllabus.
[34] State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
[35] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
[36] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.