THE STATE OF OHIO, APPELLEE *v.* SMITH, APPELLANT.

(No. CA-77-13—Decided December 20, 1977.)

*Mr. Richard Bridwell,* for appellee.

*Messrs. Abraham, Purkey & Levy* and *Messrs. Cassidy, Niehoff & Meeks,* for appellant.

PUTMAN, J. The state's witnesses who claimed they were Larry Smith's accomplices told the jury Smith had (with varying numbers of them) participated in seventeen diverse and separate criminal enterprises over a two-month period. The trouble is that the Grand Jury had indicted Smith for only six of them.

We reverse this case because we find the trial to be so lacking in fundamental fairness as to be unsalvageable. The accused and his counsel were forced without notice or an opportunity to prepare to defend against accusations of eleven other separate crimes for which no specific time was fixed and for which he was never indicted.

State law relevance considerations are only half the battle where evidence of other unindicted criminal acts of the accused in the state's case in chief is concerned. Of at least equal importance is the state and federal constitu-

tional right to an advance warning of the crimes which the accused will be required to defend against at his trial.

This case fails on both concepts. We will discuss both the concept of state law relevance and the separate concept of constitutional right to sufficient advance notice to allow a fair play opportunity to prepare a defense to the criminal charges which the state expects to show.

This court is not insensitive to the problems of crime victims and law enforcement agencies. We are also aware that the evidence of the guilt of the accused in this case not only included several months flight to avoid prosecution and an arrest while hiding in his own attic, but also a recovery from the residence of the accused of the contents of the safe of our own Clerk of Courts carried from our own courthouse.

We are also aware that the accused, at trial, admitted spending more than four years (1970-1974) in the Ohio Penitentiary for crimes of the same class prior to the crime spree which led to this trial. No matter how hopeless the plight of the accused appears, it never justifies tearing up the Constitution and flushing it down the drain along with 752 years of Anglo-American history.

Where defense counsel, as here, has prepared to defend the six basic crimes of these indictments on the basis of alibi, it is patently offensive to the basic American concept of fair play to "blind-side" him with eleven other crimes of which he has had no prior notice. No quantity of evidence can render this trial practice either fair or just.

Where the state feels compelled to show a jury eleven other contemporaneous crimes of the accused, is it really asking too much to expect the state to observe procedural fair play?

Stated otherwise, if the evidence of the six indicted crimes is so overwhelming, why not just give the accused a fair trial on those? On the other hand, if there is such a need to show a jury the eleven other crimes, why not return an indictment for them also?

Having made that preliminary analysis, we turn to a detailed consideration of the case.

Defendant-appellant, Larry Raymond Smith, was

charged in two separate indictments with five counts of breaking and entering in violation of R. C. 2911.13; four counts of safecracking in violation of R. C. 2911.31; three counts of grand theft in violation of R. C. 2913.02 and one count of complicity in violation of R. C. 2923.03, the complicity charge being dismissed at the close of the state's case. The charges arose from six separate incidents to wit: a break in at Perry Wiles Distributing Company, first count; a break in at Terrace IGA Foodliner, third count; a break in at Lumbertown Cash and Carry, eighth count; a break in at Tom's Ice Cream Bowl; and a break in at the Muskingum County Court House, and Zanes Market, seventh count. The evidence revealed that all of the break ins occurred at night, within a time span of approximately two months, and that all except one involved safecracking or attempted safecracking.

Following a four-day jury trial, defendant was convicted of five counts of breaking and entering, four counts of safecracking and three counts of grand theft.

The state introduced photographs and physical evidence found pursuant to a search warrant at appellant's residence. This included "loot" from the indicted crimes.

Appellant filed a timely pre-trial motion to suppress this evidence. It was overruled.

The state called several alleged accomplices of appellant, John Newton, David Cosgrove, Chester Newton, and Mike Kirkbride, as witnesses. The state was permitted to lead and cross-examine these witnesses. Over an objection of the defendant, the trial court allowed into evidence the transcribed statement of John Newton. The state had used that statement in its direct examination of the witness to refresh his recollection. The statement referred to other crimes allegedly committed by appellant for which he was neither indicted nor on trial. In fact, the state, through several witnesses elicited testimony concerning eleven other unindicted alleged criminal acts of defendant over an objection by the defense and a motion for a mistrial.

Prior to the closing argument, defendant requested that the court use the definition of reasonable doubt which was used prior to January 1, 1974, rather than the defini-

tion contained in R. C. 2901.05(D) when instructing the jury on reasonable doubt. The court denied defendant's request for such an instruction and defendant duly noted an objection. From the verdicts and sentences in the trial court, appellant duly perfected his appeal.

We consider the assigned errors seriatim.

*I.*

"The court erred in permitting testimony concerning similar acts of the defendant-appellant as the same bore no relevance to the issues in question and defendant was not claiming mistake or accident, lack of intent or motive."

The general subject of use by the prosecution *in its case in chief*, of other acts of the accused consisting of crimes for which he is not being tried has been the subject of careful writing by the Ohio Supreme Court. We will not attempt to rephrase those writings. However, we reprint the admonitions contained in *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, which are here excerpted from page 126, as follows:

"Much confusion about R. C. 2945.59 might be avoided if it were observed that nowhere therein do the words 'like' or 'similar' appear. The statute permits the showing of 'other acts' when such other acts 'tend to show' certain things. If such other acts do in fact 'tend to show' any of those things they are admissible notwithstanding they may not be 'like' or 'similar' to the crime charged."

At page 128, the court states:

"In addition to the improper use of the words 'like' and 'similar' in jury instructions in criminal cases, the search for the truth is further impeded by lack of precision in limiting instructions dealing with 'other acts.'

"If the jury find from other evidence, admitted without limitation, that the defendant has performed the act or acts involved in the indictment on trial, they may then consider 'other acts' which they find the defendant has committed—for the limited purpose or purposes for which they have been received. Such evidence does tend to prove an element of the crime charged, the element of intent in the instant case, and hence is used to show 'guilt of the offense with which he is charged.'

"It is imperative to distinguish the separate concept of execution of the act involved in the indictment from the concept of guilt of the crime charged. Even though the accused did the act of killing involved in the indictment, that is not to be equated with 'guilt of the crime charged.' There are many degrees of homicide, and a killing may be noncriminal.

"If such 'other acts' tend to show the defendant's scheme, plan or system in such a way as to constitute substantial probative evidence that the accused did an act or acts involved in the crime charged, such evidence is to be received without limitation. If, however, the circumstances of such 'other acts' do not tend to show that the accused did an act which is the basis of the indictment but do tend to show his motive, intent, absence of mistake or accident on his part in doing the act involved in the indictment, then the 'other acts' are received for such limited purpose. However it is error to tell the jury that such 'limited purpose' evidence may not be considered by the jury 'as proof of the guilt of the defendant of the offense charged.'

"Where the evidence is admitted without limitation, no limiting instruction is to be given.

"Any instruction limiting evidence to the purpose enumerated in R. C. 2945.59, the 'other acts' statute, when given, should never tell the jury that the evidence cannot be considered by them as evidence of the 'guilt' of the accused of the crime with which he is charged, because only such evidence could qualify under the materiality requirement of that statute.

"Where evidence has been admitted for a limited purpose which the state claims shows the defendant did certain 'other acts' which show motive or intent of the accused, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question which is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment."

Heedless of the warning in *Flonnory* that the statute does not use either the word "like" or "similar," we ob-

serve that the state through its brief refers to the "other act" evidence as evidence of "similar acts."

Notwithstanding all that has been written on the subject[1] by the Supreme Court the state argues that the other act evidence showed that the accused committed the crime for which he was on trial and concludes:

"It is clear that this line of questioning was entirely proper *under the statute.*" (Emphasis added.)

Evidence which of itself shows or tends to show the accused did some act for which he is being tried is admissible *without limitation.* It does not depend upon R. C. 2945.59 for admissibility.

We observe that although no limiting instruction was given or requested at the time the other act evidence came in, a "limited purpose" instruction was given in the general charge and no Rule 30 objection was made thereto by the accused.[2] This indicates to us that if the state claimed the other act evidence was admissible without limitation, the trial court was never made aware of that claim or else did not subscribe to its validity.

Where the state seeks to use evidence of collateral crimes in its case in chief, it would be prudent (if not mandated by the due process requirement of advance notice) to give the defense specific adequate pre-trial notice[3] and to advise the trial court to screen the evidence in the absence of the jury. The trial court should "pin down" the prosecution as to whether or not the evidence is limited purpose evidence and force the state to declare precisely what specific purpose the evidence is claimed to serve.

There is no rule which makes all unindicted crimes of the same class admissible in the state's case in chief and this is what the record here shows. The state elected

---

[1] See Herbert, *Ohio's Similar Acts Statute: A Prosecutor's Perspective,* 9 Akron L. Rev. 302 and 312 (1975).

[2] The text of the instruction is objectionable. It fails to tell the jury it is for them to decide whether the accused did the other acts. The court must not, as here, tell the jury the other acts are "similar." (Query: What is the function of the concept of "similarity" where the evidence is offered only for a limited purpose?)

[3] See analogous Criminal Rule 12(D)(1).

to indict the accused for about one third of the diverse crimes allegedly committed by this gang in a crime spree over a two month period and then rammed proof of all of them past the trial court in the case in chief. The only characteristic which exists common to all of them is that they are "break-ins" and consequent thefts.

The trouble here may be pin-pointed to the use of the malapropism "similar acts" when all that is involved is other burglaries.

Now that the case is in the Court of Appeals, the prosecutor claims the evidence of guilt is so overwhelming as to render the other-acts-evidence error harmless. *Chapman* v. *California* (1967), 386 U. S. 18. Did the evidence appear to be overwhelming to those who had actually heard it at the time the trial decision was made to show the other acts of the accused for which he was not on trial? We consider the prosecuting attorney's "battlefield decision" to re-inforce his case in chief with proof of eleven other unindicted crimes to be a reliable indicator of the appearance of the sufficiency of the evidence at that time. He heard his witnesses and watched the jury's reaction to them. Those priceless intangibles are not captured by the cold printed page. Moreover, "overwhelming evidence of guilt" is only half the harmless error doctrine of *Chapman* v. *California*. The second element is that we must be able to certify that we find beyond a reasonable doubt the evidence of the eleven other unindicted crimes could not have contributed to the verdict of guilty of the six crimes for which the accused was on trial. To state the proposition is to refute it.

We now consider further the state law question of relevance.

R. C. 2945.59 states:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or sys-

tem in doing the act in question may be proved whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

In *State* v. *Hector* (1969), 19 Ohio St. 2d 167, the defendant was charged with committing a felony murder, during the commission of an armed robbery of a cab driver on November 10, 1967. The sole issue at trial was the identity of the perpetrator of the offense. The defendant presented an alibi defense. The state offered evidence to show that the defendant had committed an armed robbery of a cab driver on November 4, 1967; an armed robbery of a grocery store on November 4, 1967; and an armed robbery of a cab driver on November 7, 1967. The court, in reaching its decision, noted that R. C. 2945.59 (which remains unchanged in the new criminal code) "refers only to motive, intent, absence of mistake or accident, scheme, plan or system, and does not contain the word 'identity.'" *Id.*, at 176. The court stated that identity may however be proven by other acts where they "* * * are committed by the same persons, in the same locality within a period of time reasonably near to the offense on trial and where the same plan, system and methods are followed * * *." *Id.* Further, the court stated:

"There must be some similarity of methodology employed which itself would constitute probative evidence of the probability that the same person (whoever he might be) committed both crimes. * * * For such evidence to be admissible, there must be such a logical connection between the crimes that proof of one will naturally tend to show that the accused committed the other." *Id.*, at 177.

The court made it clear that there was, in that case, no proof of any "common scheme, plan or system" sufficient to show "identity."

We find the same to be true in the case at bar. See also *State* v. *Burson* (1974), 38 Ohio St. 2d 157.

The court held therein that:

"Prosecutors and trial courts should be particularly

aware that evidence of other acts of a defendant is admissible only when it 'tends to show' one of the matters enumerated in the statute [R. C. 2945.59] and only when it is relevant to proof of the guilt of the defendant of the offense in question. Such evidence is admissible, not because it shows that the defendant is crime prone, or that he has committed an offense similar to the one in question, but in spite of such facts." (Page 158.)

See also *State* v. *Curry* (1975), 43 Ohio St. 2d 66.

The point is that in some cases the particular common scheme, plan, or system may be of such a nature as to be persuasive *of itself* that the accused did some act alleged in the indictment. If so it is admissible in the state's case in chief and is not limited purpose evidence.

Other common schemes, plans or systems may not be of the quality above described, yet might nevertheless be such as to qualify for admission in rebuttal to negate for example accident or mistake where those things are raised in the defense by way of confession and avoidance, *e. g.* the wife who defends on the claim of accident against a homicide charge arising from the death of her fifth husband to die of gunshot wounds she "accidently" inflicted.

Here in the case at bar, testimony was elicited that the defendant had engaged in break-ins or burglaries at a skating rink; Hardesty Insurance Company; People's Beverage Company; the Welfare Building; Metropolitan Life Insurance Company; a bar on Linden Avenue; the Maple Drive-In Theatre; Beverly House of Beauty; C. W. Taylor and Sons; and a private residence on LaSalle Street; and "fencing" a coin collection, for a grand total of eleven other unindicted crimes. Although committed on one nine-week period, there was no evidence of a common scheme, plan or system which itself would logically tend to prove that defendant committed the acts for which he was being tried. There was no uniformity in the time of day of the other acts, the method of entry, or the items taken. The number of the gang members participating in the "other acts" varied from two, three, in most cases four, to five, in one case.

In some "other act" cases safes were tampered with while in others no safes were involved. (Safecracking was involved in four of the six transactions out of which defendant was charged.) While all of the incidents for which the defendant was charged involved places of business, not all of the testimony of other unindicted crimes involved places of business. Accordingly, the first assignment of error is sustained.

## II.

"The trial court erred in allowing the introduction into evidence of a transcribed copy of the prior tape rerecorded statement of John Newton, an alleged accomplice of defendant-appellant."

We sustain the second assignment of error because the statement of the state's witness, who testified, was replete with inadmissible evidence of other crimes for which the accused was not on trial. Otherwise, although prior consistent statements of a witness are generally not admissible, the particular cross-examination of this witnss in this case made the statement admissible for the limited purpose of showing his state of mind at the time when he made the statement.

## III.

"The trial court erred in permitting the prosecution to lead and cross-examine its own witnesses."

We have considered the record and find no abuse of discretion on the part of the trial court in allowing the prosecution to use the leading questions under the circumstances of this record. The third assignment of error is overruled.

## IV.

We find the affidavit in support of the search warrant satisfies all standards applicable thereto. The evidence seized pursuant thereto was properly admitted.

Appellant contends that any evidence seized as a result of the search conducted upon the premises at 420 La-Salle Street, in the city of Zanesville, on November 17, 1975, should be suppressed, for the reason that such search, although conducted pursuant to a search warrant, was un-

lawful.    As grounds therefor, appellant asserts that the affidavit in support thereof was insufficient to establish probable cause.

The issuance of a search warrant in this state is governed by Section 14, Article I, of the Ohio Constitution, R. C. 2933.21 *et seq.* and Criminal Rule 41.  With particular reference to the sufficiency of an affidavit for a search warrant, rigid federal standards have been established. *Aguilar* v. *Texas* (1964), 378 U. S. 108; *Spinelli* v. *United States* (1969), 393 U. S. 410; *United States* v. *Harris* (1971), 403 U. S. 573.  The state concedes that federal standards are controlling herein.  See *State* v. *Haynes* (1971), 25 Ohio St. 2d 264, and *State* v. *Karr*, (1975), 44 Ohio St. 2d 163.  Those same standards are generally embodied in Criminal Rule 41(C).

Turning now to the affidavit in the case at bar, the statements of the affiant were based upon information obtained from one John Newton.  Probable cause may be based upon hearsay statements "so long as a substantial basis for crediting the hearsay is presented."  See *Jones* v. *United States* (1960), 362 U. S. 257, 269, cited in *State* v. *Karr, supra*, at 164.  Criminal Rule 41(C) provides, in pertinent part:

"The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. * * *"

There is thereby incorporated into this Rule the so-called two-prong test of *Aguilar* v. *Texas, supra.*

Appellant suggests that there are not sufficient underlying facts presented in the within affidavit to support the conclusion that the property to be seized was in fact located at the premises in question.  Appellant ignores entirely the allegation of the affidavit that Newton personally "was present in the basement of 420 LaSalle Street with Smith when the above named safes were broken into."  Accordingly, the fourth assignment of error is overruled.

*V.*

"The statutory definition of 'reasonable doubt' con-

tained in Ohio Revised Code Section 2901.05(D) and made applicable to all criminal prosecutions in the State of Ohio comports with constitutionally accepted definitions of reasonable doubt and is not violative of due process."

The statutory definition of "reasonable doubt" contained in R. C. 2901.05(D) is valid, and the fifth assignment of error is overruled.

The Ohio legislature outlined the instruction relating to reasonable doubt in criminal cases as follows:

" 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R. C. 2901.05(D).

Appellant's contention that the above instruction is violative of due process and thus constitutionally improper is without merit.

"It is a term often used, probably pretty well understood, but not easily defined. It is not mere possible doubt: because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they can not say they feel an abiding conviction, to a moral certainty, of the truth of the charge." *Commonwealth* v. *Webster* (1850), 5 Cushing (59 Mass.) 295, 320, 52 Am. Dec. 711,730.

Chief Justice Shaw went on to elaborate on "moral certainty" as being "a certainty that convinces and directs the understanding and satisfies the reason and judgment, of those who are bound to act conscientiously upon it." As can clearly be seen by comparison, this is in substance the identical definition of reasonable doubt that has been incorporated into R. C. 2901.05 (D). The previous Ohio

statute on the reasonable doubt charge did in fact incorporate the "moral certainty" language, but, as was noted by the United States Supreme Court in *Hopt* v. *Utah* (1887), 120 U. S. 430:

"The difficulty with this instruction is that the words 'to a reasonable and moral certainty' add nothing to the words 'beyond a reasonable doubt;' * * *." (Page 430.)

The court in that case went on to approve the language now used in the statute:

"* * * A charge to the jury that if, after an impartial comparison and consideration of all the evidence, they can truthfully say that they have an abiding conviction of the defendant's guilt, such as they would be willing to act upon in the more weighty and important matters relating to their own affairs, they have no reasonable doubt, is not erroneous." (Page 431.)

Supporting their decision, the court noted:

"(A)n illustration like the one given in this case, by reference to the conviction upon which jurors would act in the weighty and important concerns of life, would be likely to aid them to a right conclusion, when an attempted definition might fail." (Page 441.)

See also, *Miles* v. *United States* (1880), 103 U. S. 304, in which the court upheld a charge to the jury that the absence of reasonable doubt was such " 'that a prudent man would feel safe to act upon that conviction in matters of the highest concern and importance to his own dearest personal interest.' " (Page 309.)

For the foregoing reasons, assignments of error three, four and five are overruled, assignments of error one and two are sustained; the judgment of the Court of Common Pleas of Muskingum County is reversed; and this cause is remanded to that Court for further proceedings according to law.

*Judgment reversed.*

RUTHERFORD, P. J., and DOWD, JJ., concur.