DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of felonious assault with a firearm specification, one count of carrying a concealed weapon, one count of having a weapon while under disability, and one count of tampering with evidence. For the reasons that follow, the judgment of the trial court is reversed as to the conviction and sentence for carrying a concealed weapon and affirmed in all other respects.
Appellant Gregory Harris sets forth the following assignments of error:
"Assignment of error No. 1:
 "Appellant was denied the effective assistance of counsel when his attorney failed to challenge prospective juror [B.] for cause or to exercise a peremptory challenge on her.
"Assignment of error No. 2:
 "Appellant was denied the effective assistance of counsel when his trial attorney failed to object to a string of leading questions posed by the assistance prosecuting attorney to Detective Navarre. (TR 389-395.)
"Assignment of error No. 3:
 "The conviction for carrying a concealed weapon was supported by insufficient evidence and is against the manifest weight of the evidence.
"Assignment of error No. 4:
 "Prosecutorial misconduct during closing argument deprived appellant of a fair trial. (Tr 403-405.)
"Assignment of error No. 5:
 "Appellant was denied the effective assistance of counsel when his attorney failed to make timely objections."
The undisputed facts that are relevant to the issues raised on appeal are as follows. On June 20, 2001, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2), one count of carrying a concealed weapon in violation of R.C. 2923.12, one count of having a weapon while under disability in violation of R.C. 2923.13(A)(2), and one count of tampering with evidence in violation of R.C.2921.12(A)(1). The felonious assault count was accompanied by a firearm specification. On August 28 and 29, 2001, the matter came on for trial before a jury, and on August 29, 2001, the jury returned verdicts of guilty as to all counts. Appellant was sentenced to seven years for the felonious assault conviction, with the sentences for the other convictions to be served concurrently to that sentence. Appellant was ordered to serve the three-year sentence for the firearm specification prior to and consecutively to the other sentences. It is from that judgment that appellant appeals.
Appellant's first, second and fifth assignments of error raise the issue of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington
(1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent.State v. Hamblin (1988), 37 Ohio St.3d 153.
In his first assignment of error, appellant asserts that trial counsel should have chosen to strike two of the jurors. Appellant does not explain why the first juror he names should have been stricken. As to the other juror, Mrs. [B.], appellant argues that there was clear evidence that she would not fairly consider the case, in part because she has a son who is a police detective and would find the testimony of police officers particularly credible. After defense counsel questioned Mrs. [B.] briefly about her son's job as a police officer, the following dialog took place:
 "MR. SZYPERSKI: * * * [D]o you feel that you're going to place a little more weight with the testimony of the officers than a layperson?
"MRS. [B.]: To be honest with you, yes.
"MR. SZYPERSKI: You do?
"MRS. [B.]: Yes.
 "MR. SZYPERSKI: And would it be safe to say that even if I told you that you shouldn't do that, more important, the judge said, would it be safe to say, being honest as you have all morning — and I know this has been a little difficult for you.
 "MRS. [B.]: I guess. I guess because my son is a policeman. Maybe that's why.
 "MR. SZYPERSKI: Exactly. That's why I'm asking you these questions.
"MRS. [B.]: Right.
 "MR. SZYPERSKI: But would it be safe to say that if you were deliberating and there was a question of just the fact alone he's a cop, therefore I'm going to give him a little — I'm going to give him the benefit of the doubt. Would that be your position?
"MRS. [B.]: I don't know.
 "MR. SZYPERSKI: All right. Well, you're backing off a little now.
"MRS. [B.]: See, I guess — I guess I —
"MR. SZYPERSKI: I'm not trying to argue with you.
"MRS. [B.]: I guess I lean towards the police.
"MR. SZYPERSKI: You lean toward the police.
"MRS. [B.]: Right."
Appellant asserts that the testimony of the police officers was critical in this case and that allowing a juror who admitted during voir dire that she was inclined to "lean towards the police" constituted ineffective assistance of counsel. Initially, we note that trial counsel's decisions as to which jurors to excuse and which ones to keep are considered to be a part of trial strategy. See State v. Goodwin
(1999), 84 Ohio St.3d 331, 341. The strategic choices of trial counsel are presumed to be sound. Strickland, supra, at 689. Further, it is important to note that several times during voir dire defense counsel took the time to consult with appellant, which indicates that counsel was carefully considering the potential jurors. During the process of deliberating, jurors naturally will attach more credibility to the testimony of some witnesses than to others. Mrs. [B.] was simply being truthful with defense counsel.
Pursuant to Strickland, supra, when examining counsel's decision not to excuse Mrs. [B.], we must consider whether there is a reasonable probability that if this juror had not been seated appellant would have been acquitted of the charges against him. Specifically, we must consider the significance of the police officers' testimony. The first officer to testify stated that no useable fingerprints were found on the gun recovered by the arresting officers. He also stated that the police did not conduct a gunpowder residue test on appellant's hands after his arrest. The jury heard the testimony of the detective who responded to the scene when the call came in, talked to the victim and witnesses, and obtained a brief description of the suspect. The detective testified that he broadcast the description and, when he saw appellant after the officers apprehended him, was able to identify him by name. He further testified that he looked around the area where the gun was found after he was told a shot had been fired while the officer was chasing appellant but was not able to locate any shell casings. He also testified that he searched the outside of the victim's house and the surrounding area for bullet holes but did not see any.
Another officer testified that he and his partner responded to the call that shots had been fired and, after being given a description of the suspect, located appellant nearby. The officer further testified that appellant began to run when the officers approached him and said that when appellant began running he placed his hand around his hip area "almost as if he was trying to hold something or grab something." The officer stated that as appellant rounded a corner and was out of the officer's sight for about three seconds, he heard a shot fired. When the officer tackled appellant after another half block or so, appellant did not have a gun in his possession. He further testified that he and his partner searched the area near where appellant was apprehended and that his partner found a small-caliber handgun. The officer testified that later that night the victim identified appellant as the person who had shot at him.
The arresting officer's partner testified that when the first officer started to chase appellant, he remained behind with another male who had been with appellant. The officer stated that he heard a gunshot after appellant rounded the corner out of his line of sight. He also testified as to finding the gun and searching unsuccessfully for a shell casing in the area.
After a thorough review of the testimony of the police officers as summarized above, it is clear that none of it went to the issue of guilt as to the felonious assault charge. None of the officers who testified witnessed the shooting. The key witnesses as to that charge were the victim, his wife and his neighbor. The arresting officer's testimony that he saw appellant holding his hand to his side while running away and that a few minutes later his partner found a gun in the grass nearby could arguably relate to the charges of carrying a concealed weapon and tampering with evidence. However, as will be explained in detail below, the conviction for carrying a concealed weapon is reversed herein due to insufficient evidence. As to the conviction for tampering with evidence, after thorough consideration of the record below, we are unable to find that there is a reasonable probability that the verdict as to the charge would have been different if counsel had excused Mrs. [B.].
Accordingly, appellant's first assignment of error is not well-taken.
In his second and fifth assignments of error, appellant asserts that counsel was ineffective for failing to make timely objections during trial. In his second assignment of error, appellant argues that the prosecutor asked leading questions of one of the state's witnesses on re-direct examination and that defense counsel should have objected. Evid.R. 611(C) states:
 "(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. * * *"
As stated in State v. Lewis (1982), 4 Ohio App.3d 275, 278, "[t]he exception `except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." See, also, State v. Madden (1984), 15 Ohio App.3d 130, 133, and State v.Smith (1977), 59 Ohio App.2d 194, 203. This court has noted that while the general rule is that leading questions should not be used during the direct examination of a witness, the trial court has discretion to permit the state to ask leading questions of its own witnesses. State v. Miller
(1988), 44 Ohio App.3d 42, 45. Also, State v. Oviedo (Aug. 24, 2001), 6th Dist. No. WD-01-001. Although the issue presented in the case before us is defense counsel's failure to object and not abuse of discretion, we find that this form of questioning is routinely allowed and that it is likely that any objection would have been overruled. This court has reviewed the witness' testimony in its entirety. When the testimony is considered as a whole, it is clear that on redirect, the prosecutor was essentially emphasizing parts of the witness' prior testimony and restating information that had already been provided on direct. Based on the foregoing, this court finds that trial counsel was not ineffective for failing to object to the prosecutor's questions of the witness during redirect examination and, accordingly, appellant's second assignment of error is not well-taken.
In his fifth assignment of error, appellant asserts that trial counsel failed to make other timely objections. Appellant first asserts that counsel should have objected to certain statements made by the prosecutor during closing argument, as set forth under his fourth assignment of error. This issue will be addressed when we consider Assignment of Error No. 4.
Appellant also asserts that counsel should have objected to a statement made by one of the arresting officers that appellant "had other charges on him." Appellant argues that, while the jury was made aware of appellant's 1980 robbery conviction because it related to the charge of having a weapon while under disability, the jury was not aware that there were other charges pending against appellant at the time of his arrest.
Having reviewed the officer's testimony in its entirety, we find that his comment was made at the end of a lengthy direct examination. The prosecutor did not attempt to elicit additional information from the officer as to the specific charges pending against appellant and, after one more question, direct examination was concluded. In this instance, an objection by defense counsel might have called the officer's statement to the jury's attention and, for that reason, counsel's decision not to object could be considered trial strategy. Accordingly, we find that counsel's performance did not fall below an objective standard of reasonableness and appellant's fifth assignment of error is not well-taken.
In his fourth assignment of error, appellant asserts that prosecutorial misconduct during closing argument deprived him of a fair trial. Appellant argues that the prosecutor began his closing argument with a "faulty focus" when he commented that the neighborhood in which the assault occurred was being revitalized at that time and that the victim had cleaned up his property in an attempt to bring that section of Toledo "back to life." According to appellant, the prosecutor was attempting to emphasize the social consequences of the crime rather than the crime itself.
The prosecution and the defense have wide latitude during opening and closing arguments and questions as to the propriety of these arguments are generally left to the trial court's discretion. See State v. Loza
(1994), 71 Ohio St.3d 61, 78; State v. Brown (1988), 38 Ohio St.3d 305,317. Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial.Loza, supra. "The test for prosecutorial misconduct is whether the prosecutor's comments were improper and, if so, whether those remarks prejudicially affected the defendant's substantial rights." State v.Eley (1996), 77 Ohio St.3d 175, 187; State v. Lott (1990),51 Ohio St.3d 160. Finally, a closing argument must be reviewed in its entirety to determine whether prejudicial effect occurred. State v.Frazier (1995), 73 Ohio St.3d 323, 342.
The prosecutor's remarks in this case were introductory, employed to set the stage for his summary of the events surrounding the crime. When the closing argument is reviewed in its entirety, it is clear that the statements cited by appellant, while arguably irrelevant to the factual issues before the jury, were not prejudicial. Based on the foregoing, this court finds that appellant was not prejudiced by the prosecutor's remarks and, accordingly, his fourth assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the conviction for carrying a concealed weapon was not supported by sufficient evidence and was against the weight of the evidence. Appellant argues that the evidence did not support a finding that the gun had ever been concealed.
"Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine
 "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2923.12(A) provides:
 "No person shall knowingly carry or have concealed on his or her person or concealed ready at hand, any deadly weapon or dangerous ordnance."
The state presented the testimony of victim Thomas Meadows, who testified in relevant part as follows:
 "Q. All right. Now, when you say he shot, did you see a physical action by him that indicated he was shooting at you?
"A. Yes, I did.
"Q. And what was that?
 "A. I saw him point something at me and he fired two or three times.
"* * *
"Q. All right. Could you actually see the gun?
 "A. No, I couldn't actually see the gun, but he pointed something at me and, you know, like fire, you know. Like. That's the only thing that could be is a gun."
Meadows' wife, Andrea, stated twice that she did not see the gun. Under further questioning, she stated:
 "A. I saw him remove his hands from the handle bar of the bike and go to the front of his body. When he came out was when I heard the first shot.
 "Q. * * * [Y]ou said toward the front of his body. At that point you put your hand, where is that? What part of your body is that?
 "A. Right — to me it looked like right, you know, in front * * * his belt or his pants.
"Q. Okay. Like the top of his pants or his waist area?
"A. Right, yes.
"Q. And he reached in there?
"A. Yes."
The Meadows' neighbor, Michael Epperson, testified that right after the shooting he saw appellant's "hand going down." Defense counsel questioned Epperson as follows:
 "Q. You did not see, did you, any movement into a waistband or pocket?
 "A. No, sir. I — like I said, I seen him put his hand down."
Finally, the officer who chased appellant on foot shortly after the shooting and apprehended him testified that as they were running down the sidewalk, appellant "* * * immediately placed his right hand around his hip area and it was almost as if he was trying to hold something or grab at something."
None of the witnesses testified to having seen appellant remove the gun from a pocket or other place of concealment before firing it, nor did they testify that the gun had been "concealed ready at hand." Upon thorough consideration of the law as summarized above and the relevant testimony, we find that sufficient evidence was not presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that appellant was carrying a concealed weapon prior to his arrest. Accordingly, appellant's third assignment of error is well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed as to appellant's conviction and sentence on the charge of carrying a concealed weapon. The judgment is affirmed in all other respects. This case is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal are assessed equally between the parties.
JUDGMENT REVERSED, IN PART, AND AFFIRMED, IN PART.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.