DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of aggravated murder following trial to a jury. For the reasons that follow, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} "Wrongfully admitted and excluded testimony deprived appellant of a fair trial both individually and cumulatively:
 {¶ 5} "(A) Deborah Draper should not have been allowed to give hearsay testimony pursuant to Evid.R. 804(B)(2) (TR 436-548);
 {¶ 6} "(B) Leonard Wiggins should not have been allowed to testify that he gave a prior consistent statement (TR 606);
 {¶ 7} "(C) The prosecutor should not have been allowed to ask, and Leonard Wiggins should not have been allowed to answer, a leading question (TR 595);
 {¶ 8} "(D) Lynette Tucker should not have been allowed to give hearsay testimony (TR 392, 394);
 {¶ 9} "(E) Maurice Robinson should not have been allowed to give a panegyric to Ronald Draper (TR 277);
 {¶ 10} "(F) Loleatha Tucker should have been allowed to testify that she was aware of Wiggins having confessed to shooting Draper (TR 381-387).
 {¶ 11} "Assignment of Error No. 2
 {¶ 12} "The trial court committed prejudicial error by not conducting individual voir dire of each juror or declaring a mistrial after the victim's father visited the jury. (TR 296-327)
 {¶ 13} "Assignment of Error No. 3
 {¶ 14} "Appellant received ineffective assistance of counsel when his trial attorney failed to object to the testimony addressed in assignment of error No. 1(D) and (E) and failed to request either voir dire of all jurors after the incident addressed in Assignment of Error No. 2 or to move for a mistrial."
 {¶ 15} The undisputed facts that are relevant to the issues raised on appeal are as follows. In July 1991, defendant Christopher Early's home was burglarized two times, first by the victim, Ronnie Draper, and two other men, and the second time by Draper and yet another man. Sometime during the night of July 25, 1991, after the second burglary, Draper was found in an isolated area of Toledo with two bullet wounds to his head. He was taken to the hospital, where he died two days later after having been conscious for part of that time. On May 2, 2001, appellant was indicted on one count of kidnapping and two counts of aggravated murder in connection with the shooting of Draper in 1991. Each count of the indictment was accompanied by a firearm specification.
 {¶ 16} The case came to trial before a jury in October 2001. On the second day of trial, the victim's father entered the jury room while the jurors were assembling. Mr. Draper poured himself a cup of coffee and, when questioned by one of the jurors, identified himself as the victim's father. The bailiff asked him to leave and the trial court then questioned the jurors who had encountered him, all of whom indicated that the incident would not have an effect on their verdict. After the voir dire, the trial court declared that the incident had not tainted the jury and the trial resumed. On October 4, 2001, the jury returned verdicts of guilty on each count and on the specifications. Sentencing was held on October 15, 2001 and on appellant's motion, without objection from the state, the kidnapping count was dismissed on statute of limitations grounds. Further, the state elected to proceed to sentencing only on the conviction for aggravated murder which alleged prior calculation and design in violation of R.C. 2903.01(A). Appellant was sentenced to life imprisonment with parole eligibility after 20 years and to a consecutive three-year term for the firearm specification. A nolle prosequi was entered as to the kidnapping count and the second aggravated murder count. It is from that judgment that appellant appeals.
 {¶ 17} Appellant presents six arguments in support of his first assignment of error in which he alleges that wrongfully admitted and excluded evidence deprived him of a fair trial.
 {¶ 18} The admission or exclusion of evidence is generally left to the discretion of the trial court. State v. Maurer
(1984), 15 Ohio St.3d 239, 265. "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion."State v. Finnerty (1989), 45 Ohio St.3d 104. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Jenkins
(1984), 15 Ohio St.3d 164; State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 19} In his first argument, appellant asserts that Draper's mother, Deborah, should not have been allowed to testify as to what she believed was her son's indication before he died that appellant shot him. Before Ms. Draper took the witness stand, a conference was held in chambers to discuss the anticipated testimony about the communication between Ms. Draper and her son. While in chambers, the state and the defense questioned Ms. Draper, who stated that her son was alert when she first saw him at the hospital. His mother stated that she visited Draper in the intensive care unit the night he was shot and said that, although her son was intubated, they were able to talk. She testified that at one point her son said "BroBro," and, thinking that her son was trying to indicate that one of his brothers was in danger, Ms. Draper named each of her sons but got no response from Draper. She testified that she then said the name "Chris," thinking of appellant, and Draper nodded. The two had no further conversation before Draper died. The state argued that Ms. Draper's testimony was admissible because her son's words to her constituted a dying declaration as contemplated by Evid.R. 804(B)(2). Appellant argued that the testimony was hearsay.
 {¶ 20} The trial court ruled that the testimony would be allowed and appellant stated a continuing objection thereto. Ms. Draper's testimony when the trial reconvened was essentially the same as that provided during the in camera discussion.
 {¶ 21} Evid.R. 804(B)(4) provides in relevant part:
 {¶ 22} "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 {¶ 23} "* * *
 {¶ 24} "(2) Statement under belief of impending death. In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant, while believing that his death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death."
 {¶ 25} On appeal, appellant again asserts that the dying declaration exception to the hearsay rule does not apply because the state did not demonstrate that at the time Draper spoke to his mother he believed that his death was imminent. Appellant does, however, concede that the state established that Draper's statement to his mother in the hospital "concerned the cause or circumstances of his believed-to-be-imminent death" [emphasis added] but disagrees that Draper believed his death to be imminent. Setting aside the obvious inconsistency in those two statements presented by appellant on appeal, we find after a thorough review of the record that the trial court did not abuse its discretion in allowing the testimony as a dying declaration. Naturally, no one will ever be able to say with certainty whether Draper knew his death was imminent. However, the trial court heard the testimony of Officer Wilcox, of the Toledo Police Division, who stated that although the shooting had occurred 10 years earlier, he recalled vividly that when he and his partner found Draper sitting in the street on the night of July 25, 2001, bleeding heavily from gunshot wounds to his head, Draper asked the officer to pick him up because he did not want to die on the ground. He said that Draper tried to stand and was fairly insistent that he did not want to die on the ground. Officer Wilcox testified that Draper was somewhat lucid at that point but quickly became incoherent and then lost consciousness. He stated that Draper was "somewhat calm" and said he thought Draper was aware of the fact that he was dying. There was no evidence before the trial court that while Draper lay in the hospital in the hours following the shooting, he came to the conclusion that he was not going to die. In fact, his attempt to communicate the identity of his assailant as interpreted by his mother supports the theory that he knew he was dying and was trying to utter a few last words. When he communicated with his mother, Draper was in the intensive care unit of the hospital. He knew he had been shot in the head and there is no reason to believe based on the record that he thought he was on the road to recovery.
 {¶ 26} Appellant also argues that a dying declaration must be made with a degree of spontaneity and that Draper's communication to his mother in the hospital was not a spontaneous outcry. Evid.R. 804(B)(2) does not, however, require a showing that the declaration was spontaneous and Ohio courts have not created such a requirement.
 {¶ 27} For the foregoing reasons, we find that Ms. Draper's testimony as to her communication with her son in the hospital was admissible as an exception to the hearsay rule pursuant to Evid.R. 804(B)(2), and the trial court's ruling was not an abuse of discretion.
 {¶ 28} Appellant next argues that the state should not have been permitted to ask witness Leonard Wiggins, who was with appellant the night Draper was shot, whether his in-court testimony was the same as the information he gave police on the night of the shooting. Wiggins had just testified that on the night of the shooting, he and his mother went to the police station, where he related the details of the crime. The defense objected to the question but the objection was overruled and Wiggins responded that his testimony was the same as that which he had given the police. Appellant appears to be arguing that Wiggins' testimony was hearsay because it referred to a prior consistent statement. He also argues that asking Wiggins the question amounted to improper bolstering of his testimony.
 {¶ 29} In State v. Tamulewicz (Oct. 13, 1994), Cuyahoga App. No. 66126, the court of appeals considered a challenge to a similar question posed in that case to several state's witnesses. In Tamulewicz, three witnesses were asked by the prosecutor if they had made statements to the police and whether those statements were consistent with their testimony. The witnesses said their statements were consistent but, as in this case, their original statements were not admitted into evidence. The court inTamulewicz ruled that the witnesses' testimony did not violate the hearsay rule because only the fact that the statements were made was in evidence; the contents of the statements were not. As in Tamulewicz, the state in the case before us sought only to ask Wiggins if his testimony was consistent with the statement he gave police; the state did not attempt to elicit testimony as to the contents of the witness's prior statement. Accordingly, we find that the testimony objected to was not hearsay and the trial court's decision to allow it was not an abuse of discretion. This argument is without merit.
 {¶ 30} Appellant also argues that, by eliciting the reference to his prior statement to the police, the state was attempting to bolster Wiggins' testimony and fend off a potential accusation by the defense that he had recently fabricated his story. Wiggins' prior statement was not offered into evidence, however, and there was no vouching for Wiggins' credibility by other witnesses. This argument is also without merit.
 {¶ 31} Appellant next argues that the trial court erred by allowing the state to question Wiggins about appellant telling him, when Wiggins got into appellant's car several hours before the shooting, that he wanted Wiggins to lure Draper to a location where appellant could beat Draper up in retaliation for breaking into appellant's apartment. Specifically, the prosecutor asked Wiggins: "Did Chris Early say anything in the car that would indicate to you that he had a firearm?" The defense objected, arguing that the question was leading, and the trial court overruled the objection.
 {¶ 32} Evid.R. 611(C) provides, in pertinent part:
 {¶ 33} "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. * * *"
 {¶ 34} As stated in State v. Lewis (1982),4 Ohio App.3d 275, 278, "the exception `except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." See, also, State v.Madden (1984), 15 Ohio App.3d 130, 133, and State v. Smith
(1977), 59 Ohio App.2d 194, 203. This court has noted that while the general rule is that leading questions should not be used during the direct examination of a witness, the trial court has discretion to permit the state to ask leading questions of its own witnesses. State v. Miller (1988), 44 Ohio App.3d 42, 45. Also, State v. Oviedo (Aug. 24, 2001), 6th Dist. No. WD-01-001. Upon thorough consideration of the foregoing, however, this court finds that the question asked of Wiggins was not leading. A leading question is one which suggests an answer, or "* * * instructs [the] witness how to answer or puts into his mouth words to be echoed back." State v. D'Ambrosio (1993),67 Ohio St.3d 185, 190. The prosecutor's question in this case did not suggest an answer or put into Wiggins' mouth words to be echoed back. Accordingly, the question was properly permitted by the trial court and this argument is without merit.
 {¶ 35} Next, appellant argues that the trial court erred by permitting witness Lynette Tucker to testify that, one week before Draper was shot, he told her that appellant had threatened to kill everyone who had burglarized his home. Appellant asserts that Tucker's testimony was double hearsay and admissible only if each of the two parts of her statement is admissible under an exception to the hearsay rule. Appellant then concedes that his statement to Draper might be admissible pursuant to Evid.R. 801(D)(2)(a) as an admission of a party-opponent. We agree and find that appellant's argument that his own statement was hearsay is without merit. As to appellant's argument that the part of Tucker's testimony referring to Draper's statement to her is hearsay, the record shows that there was no objection to that part of the statement, or in fact to any part of Tucker's statement and that this argument is raised for the first time on appeal. "An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. D'Ambrosio, supra; State v. Williams
(1977), 51 Ohio St.2d 112, paragraph one of the syllabus. While an error not raised in the trial court may be reviewed pursuant to the plain error doctrine, notice of plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. An alleged error does not constitute plain error pursuant to Crim.R. 52(B) "* * * unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Campbell
(1994), 69 Ohio St.3d 38, 41, quoting State v. Long, supra, paragraph two of the syllabus. In this instance, we find that admitting the testimony did not constitute plain error and, further, pursuant to State v. D'Ambrosio, supra, we decline to address the merits of this argument regarding testimony to which the defense did not object at trial, and we find appellant's argument to be without merit.
 {¶ 36} Appellant next argues that witness Maurice Robinson's testimony about the victim's "better qualities" was irrelevant and prejudicial and inflamed the passion of the jury. Appellant refers to Robinson's response to the following question: "We've talked about Ronnie as a drug dealer and burglar, a guy that likes to drink, right? What else?" Robinson then described the victim as someone who was "fun * * * a good dude * * * a funny dude * * *." Robinson also described Draper as a drug dealer, a drinker and one whose "thing was to see how drunk he could get * * *" and inferred that Draper's reason for committing the burglary of appellant's apartment was to get money to buy things for his baby. We note that defense counsel did not object to the question or answer and, further finding that plain error does not apply herein, this claimed error is waived. See Williams,
supra. This argument is therefore without merit.
 {¶ 37} Next, appellant argues that the trial court erred by sustaining the state's objection when defense counsel asked state's witness Loleatha Tucker, "And you are aware, are you not, that at some point Leonard Wiggins told [his aunt] that he, Leonard Wiggins committed the crime himself." Appellant asserts that the statement allegedly made by Wiggins was not offered for the truth of the matter asserted or to show that Wiggins committed the crime alone, but for the effect on the witness of learning that Wiggins said it. He also argued that the witness was biased because she and Wiggins are cousins. The state argued that the testimony concerning an alleged confession by Wiggins was inadmissible double hearsay and that the effect upon Loleatha Tucker of learning that Wiggins made the alleged statement is irrelevant and meaningless.
 {¶ 38} In sustaining the objection, the trial court noted that Wiggins' statement came to Loleatha Tucker second-hand, and the court questioned the relevance of the witness's impression of Wiggins after hearing the statement.
 {¶ 39} The testimony sought to be admitted by the defense involved two levels of hearsay. The first level arose from the statement allegedly made by Leonard Wiggins to his aunt, Mary Ella Tucker, who was also witness Loleatha Tucker's aunt. The defense claimed that statement was an exception to the hearsay rule as a statement against interest. However, under Evid.R. 804(B), a statement against interest is admissible only if the declarant is unavailable as a witness. In this case, the declarant was not only available, he was a witness for the state, thereby rendering this exception to the hearsay rule inapplicable.
 {¶ 40} Appellant offers no reason why the statement which Mary Ella Tucker allegedly made to Loleatha would be admissible as an exception to the hearsay rule. Appellant merely argues that the statement should be allowed because it was being offered not for the truth of the matter asserted but to show its effect on the witness, Loleatha Tucker, and to explain her bias against Wiggins for his involvement in the shooting. Assuming appellant legitimately wished to show that Loleatha feared Draper's friends and family after the shooting, that concern on Loleatha's part does not render defense counsel's question admissible. This second part of the communication which was sought to be admitted by appellant clearly is hearsay and not admissible. This argument is without merit.
 {¶ 41} As his last argument under his first assignment of error, appellant asserts that even if this court determines that the above claimed errors are not individually prejudicial, we should recognize that their cumulative effect deprived him of a fair trial. The Supreme Court of Ohio has recognized the doctrine of cumulative error when numerous "harmless errors" are combined.State v. DeMarco (1987), 31 Ohio St.3d 191. In order for the doctrine of cumulative error to be applicable, however, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court. In this case, our review of each of the arguments presented in appellant's first assignment of error has failed to lead us to the conclusion that the trial court committed any errors, harmless or otherwise. Accordingly, there was no "cumulative error" and this argument is without merit.
 {¶ 42} Based on the foregoing, this court finds appellant's first assignment of error not well-taken.
 {¶ 43} In his second assignment of error, appellant asserts that the trial court committed prejudicial error by failing to either conduct individual voir dire of each juror or declare a mistrial after the victim's father walked into the jury room.
 {¶ 44} As explained above, on the morning of the second day of trial, as some of the jurors were entering the jury room, they encountered a man who upon questioning identified himself as the father of victim Ronnie Draper. The gentleman was escorted out of the jury room without incident and the judge was informed of the occurrence. Immediately thereafter, the judge and counsel met in chambers. The judge then questioned five jurors individually about what had taken place. Each of the jurors explained that they at first thought the man was one of the other jurors. All agreed that he did not try to discuss the case and that he said he was just there for some coffee. None of the jurors questioned felt that the incident would interfere with his or her ability to serve as a fair and impartial juror in the case. Further, when the judge stated that he was satisfied that nothing had occurred to cause the jury to be prejudiced, defense counsel did not request that the judge interview the remaining 9 jurors.
 {¶ 45} At the conclusion of the voir dire, defense counsel stated, "We are satisfied with the Court's inquiry and our opportunity to question each of the jurors. We are also satisfied with continuing this jury, there is no request for a mistrial." Based on the trial court's handling of a most unusual situation and defense counsel's indication of satisfaction with the way in which it was handled, this court finds appellant's second assignment of error not well-taken.
 {¶ 46} In his third assignment of error, appellant presents several arguments in support of his claim that he received ineffective assistance of counsel.
 {¶ 47} To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin
(1988), 37 Ohio St.3d 153.
 {¶ 48} Appellant first argues that trial counsel should have objected to Lynette Tucker's testimony that Draper had told her that appellant had threatened to kill everyone who participated in the burglary of his home as well as to witness Robinson's testimony about the victim's personal qualities. Both of these issues have been considered by this court under our analysis of assignment of error No. 1, and in doing so we have found that there was no error. Accordingly, we find that appellant's counsel was not ineffective for failing to object in those instances.
 {¶ 49} Appellant also asserts that trial counsel should have insisted upon individual voir dire of all the jurors after the victim's father walked into the jury room or moved for a mistrial. It appears from the record that the trial court spoke to each juror who was in the room when Mr. Draper walked in. Questioning the remaining jurors when they were not involved in the incident would have accomplished nothing. Appellant also argues that since the trial court did not question each and every juror, defense counsel should have moved for a mistrial. Based on our review of the incident and a careful reading of the transcript of the voir dire, this court finds that a motion for mistrial most certainly would have been denied and that counsel's representation did not fall below an objective standard of reasonableness. Counsel was not ineffective for failing to make such a motion and this argument is without merit.
 {¶ 50} Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 51} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Handwork, Knepper and Pietrykowski, JJ., concur.